RICHARD ALAN LYTER *v.* STATE OF MARYLAND

[No. 6, September Term, 1967.]

*Decided January 2, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*John F. Somerville, Jr.,* for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donald W. Mason, State's Attorney for Allegany County,* and *J. Frederick Sharer, Deputy State's Attorney for Allegany County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

On October 28, 1965, the court sitting without a jury found appellant guilty generally on a four-count armed robbery indictment and sentenced him to ten years in the Maryland Penitentiary. He contends on this appeal that his confession was involuntary and, as such, was improperly received in evidence over his objection at the trial.

The evidence adduced at the trial showed that at 1:30 a.m. on September 30, 1965, a grocery store in Cumberland was robbed at gun point by two men, later identified as Julio Conejo and Alex Grimes; that the robbers fled the scene in a waiting automobile driven by the appellant; that the appellant and his companions were shortly thereafter apprehended by the police and taken into custody; and that appellant gave a written statement to police containing incriminating admissions, on October 1.

At the trial, the State sought to prove volutariness of appellant's statement through the testimony of William Baker, a county investigator, who took the statement. Appellant objected to the introduction of his statement on the ground that it was

the involuntary product of earlier interrogations conducted by Captain James Van of the Cumberland Police Department.

Appellant testified that he was first interrogated by Captain Van at approximately 9:30 a.m. on September 30, the interrogation being conducted, for the most part, in Van's private office without other police officers being present; that Van told him that he had a right to remain silent, that anything he said could be used against him, that any statement he would make would have to be free and voluntary, and that no threats or promises would be made; that Van nevertheless got angry with him at the outset of the interrogation and kicked a garbage can, yelling out "I know you did it, confess"; that Van thereafter told him that he thought he was "a nice boy," and that his companions had "influenced" him; that while Van repeatedly told him that he couldn't make any promises, he stated that he had been in Cumberland for about thirty-five years, knew how the court and the State operated, and said "if you cooperate with me, I can cooperate with you"; that Van said he wanted appellant to "get a break, and even though I admitted this crime, he didn't have nothing against me whatsoever, that he wanted to help me"; that Van said "I can talk to the Judge and I know a lot of people," and that "I will do all in my power to see that you get off with as light a sentence as possible"; that Van told him about the case of a boy who was involved in seventy breakings and enterings who had confessed to him and who, with Van's help, got off with only a year's probation; that Van told him of another man that he got off with a light sentence and said that "after I get them off, I don't drop them," and also said that "I even got the man a job after he got out of prison." Appellant testified that he refused to give a statement at the time of this interrogation because he couldn't remember anything about the crime, being drunk in the car at the time of its occurrence. He further testified that on the following day, Captain Van again interrogated him, telling him that his companions had confessed, that now he was "really in for it," and that he, Van, was going to put appellant "so far behind bars you are never going to get out." Appellant testified that he then became scared and asked whether he, Van, could "still help him out" if he made a statement and that Van stated that "it is a

little too late" but that "I will see what I can do." Appellant was then taken to Baker's office where he promptly made the statement later introduced at his trial. The appellant testified that he was influenced by what Van had told him and made the statement to Baker for these reasons:

"* * * I felt if I make a statement then that he would give me a break because, as he told me about the man with the breakings and enterings, he said seventy breakings and enterings and he confessed and he said they got all of the stuff back, which is the same thing as in your case, they got all the money back.

* * *

"And that I got him off with a year because I know how the Court works, I know everybody in the court. I can talk to them. I can get you a break. And that is why I made a statement because I thought he was going to help me by this, I wanted to cooperate with him so he would help me."

Captain Van was called to testify after appellant had concluded his testimony on the question of the voluntariness of his statement. Van testified that he made no promises to appellant, did not threaten him, and did not say that he wanted to help appellant. He admitted questioning appellant privately on two occasions in his office, although he stated that Detective Morrisey was present during part of the first interrogation. He admitted telling appellant that he had been in the Department for thirty-seven years, and that "I may have told him that I knew some of the people, the lawyers, judges, yes, I told him that." He further admitted telling appellant "about a few cases that he handled," including the case of the so-called torch burglar, but denied telling him anything about a man involved in seventy breakings and enterings. Van admitted telling appellant about another case where he helped a boy get a job when he got out of prison. Van testified that he knew that appellant's confederate, Conejo, had made a statement on the 30th, but denied any knowledge of the details thereof.

Detective Morrisey of the Cumberland Police Department testified that no threats or promises were made by Captain Van at

the time of his first interrogation of appellant. Morrisey admitted that he was not present throughout that interrogation and stated further that he was not present at the time of the second interrogation. County Investigator Baker testified that the statement made to him by appellant was free and voluntary, but that he was not present during either interrogation conducted by Captain Van.

It is, of course, elementary that the burden is upon the State to show that a confession offered in evidence is a voluntary act of the accused and not a product of force, threats, or promises. *Combs v. State,* 237 Md. 428; *Abbott v. State,* 231 Md. 462; *Cooper v. State,* 1 Md. App. 190. The standard by which the admissibility of appellant's pre-*Miranda*[1] statement is to be measured is therefore whether, under the totality of all the attendant circumstances, the statement was given freely and voluntarily. *Clewis v. Texas,* 386 U. S. 707; *Taylor v. State,* 238 Md. 424; *McFadden v. State,* 1 Md. App. 511. To be voluntary a statement cannot be "extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Malloy v. Hogan,* 378 U. S. 1, at page 7.

At the time appellant made his statement, he was twenty-one years of age, had a high school education, had no record of prior experience with law enforcement officers, and was a virtual stranger to Cumberland, having been in that City only a few hours before the crime was committed.

On the record before us, we hold that appellant's statement was not freely and voluntarily made. While the evidence clearly shows that appellant was given all "constitutional warnings" to which he was entitled under the law at the time of his statement, and while Captain Van did testify, in response to general questions, that he made no threats or promises to appellant, and specifically denied stating that he told appellant he would help him, nevertheless there was no effective contradiction of appellant's testimony (a) that Van told him about a man who confessed to him and got only a year's probation, and (b)

---

1. *Miranda v. Arizona,* 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694 (1966).

that Van told him about a case where he got a man off with a light sentence, and (c) that Van told him about another case where he secured a job for a man after he was released from imprisonment. We necessarily view the State's failure to expressly rebut such testimony in the light of Van's own testimony that he had told appellant about some of the cases that he had handled and that he knew the lawyers and the judges. Van's purpose in making such statements was not explained by him, and this failure, when coupled with his further failure to contradict appellant's testimony that he was told by Van that he would do all in his power to get appellant a light sentence, leads us to conclude that appellant's statement was made on the implied promise that he would, through Van's help, receive some benefit therefor, *viz.*, a light sentence, probation, post imprisonment employment, or some other advantage. Cf. *Edwards v. State*, 194 Md. 387.

We hold, therefore, that appellant's statement was not freely and voluntarily made and that the court below erred in permitting it to be introduced in evidence.[2]

> *Judgment reversed; case remanded for a new trial.*

---

2. We note additionally that there was no substantial impairment of appellant's testimony concerning the garbage can kicking incident, allegedly occurring at the time of the first interrogation, nor was there any contradiction of appellant's testimony of statements made by Van at the time of appellant's second interrogation.