ROSCOE WILLIAM HALL, *v.* STATE OF MARYLAND

[No. 261, September Term, 1968.]

*Decided March 18, 1969.*

*Sanford L. Mervis* and *John D. Hackett* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Gerald A. Kroop* and *Josef Rosenblatt, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

PER CURIAM.

The appellant was found guilty by a jury in the Criminal Court of Baltimore of rape "without capital punishment" for which he was sentenced to 10 years and assault for which he was given a concurrent sentence of 3 years. On appeal he contends:

I A full appellate review was precluded by the inadequacy of the transcript of trial.

II An admission by him was improperly admitted in evidence.

III The lower court erred "in prohibiting the defense from eliciting probable meretricious reputation."

IV The trial was not fair and impartial.

V The verdicts were "against the evidence."

## I

The appellant claims that the transcript of the trial is inadequate because it does not contain the opening statements and closing arguments of the prosecutor and defense counsel. We note that the appellant was represented at the trial by the same counsel representing him on appeal. The record does not disclose that objection was made at trial to any remarks made during the opening statements and closing arguments, the appellant does not allege that there was objection made, and there is no claim now that the opening statements and arguments were in any way improper or prejudicial. The appellant urges that they should have been transcribed in any event so he could conclude "if erroneous law, improper or incorrect marshalling of facts or inflammatory comments had been made." We found a similar contention to be without merit in *Wilkins v. State,* 5 Md. App. 8, 17. Further the appellant need only have requested at the trial that the opening statements and arguments be taken down by the court stenographer and transcribed to invoke Rule 32, Rules of the Supreme Bench of Baltimore City (1967). Nor did he seek to supply what he now asserts to be an omission in the record under the provisions of Md. Rule 1027. This contention affords no basis for reversal of the judgments.

## II

Officer John Webb, testifying for the State, said that he and another officer, working in a radio car, received a call to go to Wilmer Court near Pennsylvania Avenue to meet a Gary Jones. Upon arrival Jones stated "that he was assaulted and the man had taken his common-law wife by the arm and forced her down the alley." The officer saw a "junked vehicle" in the rear of the 1300 block of Pennsylvania Avenue. The car was "rocking up and down." He heard "sobbing noises * * * like someone was crying." The officers went over to the car and saw the appellant and Ethel Lee Jones. "Mrs. Jones' clothes were pulled up and the defendant's pants were pulled down and they were in the process of having intercourse." During the cross-

examination of Webb, defense counsel asked if the appellant said he had known the victim. The transcript reads:

"A. Yes, he did say he had known her and when we—
Q. Now, you don't know for a fact whether he did or not?
A. We questioned him and—
Mr. Kroop (Assistant State's Attorney): Excuse me. He is trying to answer the question now. You may answer the question.
A. We questioned him and he couldn't—
Mr. Mervis (defense counsel): It's not responsive.
Mr. Kroop: Yes it is, your Honor.
A. —he couldn't tell us her name or couldn't tell us her address or anything, so—"

The court had the reporter read the pending question, the previous answer and the colloquy which followed.

"The Court: The question is do you know for a fact whether he knew the prosecuting witness before or not other than from the information you got from him?
A. No, not for a fact."

On re-direct examination of Webb the State asked:

"Q. Now you were going to finish the question by stating the defendant told you that he knew her, is that correct?
A. Yes, he did tell us.
Q. And after he told you that, what if anything was asked of the defendant about the lady, Miss Jones?
A. I asked the defendant if he knew her, tell us what her name was. He said that he didn't know her name. I said, 'Well, where does she live then?' He said, 'I don't know that either.' I said, 'Well, if you know the lady, how come you don't know her name and address?' He said, 'I don't know.' "

This testimony came into evidence without objection. The appellant claims for the first time on appeal that the admissions

were inadmissible because there was no compliance with the procedural safeguards of *Miranda v. Arizona,* 384 U. S. 436. Where a confession or admission is received into evidence without objection, an objection cannot be made for the first time on appeal. *Bitzer v. State,* 4 Md. App. 415; Md. Rule 1085. Although the record does not disclose the precise moment when the appellant told the officer he knew the victim, it is apparent that he so stated shortly after the officers came up to the car, prompting the officer's questions. *Miranda* does not prohibit any inquiry at all by the authorities without prior warnings. We do not think that the appellant here was subjected to interrogation within the meaning of *Miranda,* considering that prompted the officer's questions and the time, place and circumstances under which they were asked. See *Gaudio and Bucci v. State,* 1 Md. App. 455.

## III

During cross-examination of the victim defense counsel asked where she spent her time during the week. She answered, "Mostly I stay home and across the street." The State objected on the grounds of relevancy. The transcript shows the following colloquy on conference at the bench.

> "MR. MERVIS: The reason for this line of questioning is to try to show inconsistencies in her testimony later because my client claims that he has known this woman for a very brief period of time and he has had sexual relations before with her.
>
> THE COURT: You asked her already if she knew the defendant and she said 'No'. Now, if you want to ask her if she had sexual relations with the defendant before, you may ask her. But, I am not going to let you go into her complete background. Even a whore can be raped. I don't know what you want to show to the jury, but I will let you have an opportunity to introduce any evidence which will have a bearing in this case which I understand to be consent, is that correct, from your opening statement?
>
> MR. MERVIS: Yes sir.
>
> THE COURT: But, I am not going to let you review

her whole background. Anything that has any bearing on credibility as to whether there was rape here, I will let in, but I can't see—

MR. MERVIS: I am trying to establish that by virtue of the fact she should have known—

THE COURT: What?

MR. MERVIS: —the defendant and the fact he frequented this Rainbow Lounge.

THE COURT: All you have to do is ask her if she knows him and if she says no, you can let him testify and any other witnesses who can contradict her. All right.

MR. MERVIS: May I additionally mention, Your Honor, my client feels very strongly that the reason she alleged rape was because of her family situation with Jones. This is the whole problem. This would be a motivation for alleging rape.

THE COURT: That may be argument to the jury. I don't know. But, I am not going to permit you to explore every place she has lived in the last five or ten years.

MR. MERVIS: Your Honor, may I pursue the questions about relationship?

THE COURT: You may ask any questions you want and I will rule on them, but I think the materiality if she knew him before—You can ask her if she did see him or knew him and if she says no, you can contradict her with any witness that you have."

Thereafter defense counsel continued the cross-examination at length. Later he asked her if she had discussed the case with Gary Jones, her common-law husband. She said that she had and had explained to him what happened. Asked, "Was he angry about this?," she said, "Well, at the time he was angry." The transcript then reads:

"Q. Was he angry with you?
A. No, he wasn't angry with me.
Q. He wasn't angry with you? This isn't something you wanted to do and that's why he wasn't angry?

A. No.

Q. Would he have been angry if you had done this willingly?

MR. KROOP: That's objectionable.

A. Yes, I guess he would have been angry if I went and did it on my own.

THE COURT: Overruled.

BY MR. MERVIS:

Q. He has never caught you before, has he?

A. No.

MR. KROOP: Objection, Your Honor."

At a bench conference the court told defense counsel he thought the question improper. The appellant claims that the trial court thereby was "hamstringing the defense from continuing cross-examination." We do not agree. He refers to no specific ruling by the court during his cross-examination prior to the bench conference or thereafter claimed to be erroneous. A review of the entire cross-examination of the victim by defense counsel shows that he was given all proper leeway and that the appellant's contention has no validity. The scope of cross-examination is a matter for the sound exercise of the discretion of the trial court. *Holt v. State*, 3 Md. App. 544. We see no abuse of this discretion.

## IV

The appellant supports the contention that he was not afforded a fair and impartial trial by his contentions discussed under II and III herein. We have found them to be without merit. He further supports this contention on the ground that the State was represented at the trial by two Assistant State's Attorneys and thus he was "double teamed." He admits that he could find no cases to support his view. As presented the point is frivolous and in any event was not raised below. Md. Rule 1085. On cross-examination by defense counsel Gary Jones said he had never been convicted of a crime. Defense counsel questioned him from police records of arrests and convictions and specifically asked him if he was convicted in 1962 for assaulting one Geraldine Boyd. The witness said he did not remember and that he did not know any Geraldine Boyd. He was asked if he had been

convicted on 8 July 1962 of assaulting Mary L. Bryant and the witness denied that he was. Defense counsel said, "I would like the record to show * * * that we do have these records." The State objected and the court said the police record is not the way to prove the conviction, "you get the court records." Defense counsel asked time to get them and the court said that he could introduce them at any time before the end of the trial. The State offered the assistance of the State's Attorney's Office to obtain them. The appellant does not question this ruling of the court, see *Woodell v. State*, 2 Md. App. 433; Md. Code, Art. 35, § 10, but complains that police records were used to cross-examine him as to prior convictions to impeach his credibility. But the appellant did not deny the existence of previous convictions, the police records were not offered to prove them and again no objection was made to the testimony elicited. The specific circumstances advanced by the appellant and the totality of the circumstances do not show that he was afforded a trial that was other than fair and impartial.

## V

The function of this Court in reviewing the evidence in a trial by jury is to determine whether the evidence was sufficient to permit the case to go to the jury upon a motion for judgment of acquittal. Evidence which, directly or by rational inference, enables the jury to be fairly convinced beyond a reasonable doubt of the guilt of the accused of the offense charged is so sufficient. *Williams v. State*, 5 Md. App. 450.

Here the identity of the appellant as the rapist was clearly shown, not only by the testimony of the victim but by the testimony of the officer who was an eyewitness to the copulation. The *corpus delicti* of the rape was shown by the testimony of the victim that the appellant hit her, knocking her to the ground, in front of her home, that she was forcibly taken by "two boys", followed by the appellant, into Wilmer Court into a parked car, that the two boys left,[1] that the appellant, who had been standing outside the car, got into the car, "pulled my panties down

---

1. She was asked, "Did the two boys do anything? Yes or No." She replied, "Yeah, they did." She did not see the two boys in the courtroom.

and his penis he put into my vagina." Before he did this she was trying "to fight back to get up" and he hit her in the face with his hand. Officer Webb arrived while the sexual act was in progress. Webb said when Mrs. Jones got out of the car she "was holding her eye and crying and her eye was all bloodshot and red." There was "a bruise underneath of the eye." We find no error in the denial of the motion for judgment of acquittal as to the rape offense.

The assault of which the appellant was convicted was alleged to have been committed on Gary Jones. Gary Jones testified that he was walking home from a tavern with his wife, Ethel Jones, when the appellant hit him on the back of the neck with his hand and knocked him to the ground. Ethel Jones ran. Gary Jones jumped up. There were two other men with the appellant. One of them grabbed him. He "slung him off" and ran down Wilmer Court. "I stayed down there awhile. I thought my wife was in the house." He went home, found that his wife was not there, went back to the tavern and told his brother to call the police. Ethel Jones' testimony was the same. She identified the appellant as the man who hit Gary Jones "in the back of the neck," she saw the other two men "come up" and ran home. She got as far as her doorstep when the appellant hit her. We find no error in the denial of the motion for judgment of acquittal as to the assault offense.

*Judgments affirmed.*