BRUCE D. KIDD *v.* STATE OF MARYLAND

[No. 45, September Term, 1976.]

*Decided November 3, 1976.*

The cause was argued before MOYLAN, MENCHINE and LOWE, JJ.

*Harriette Cohen, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Wayne Cymek, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The root problem giving rise to the present appeal is the failure to appreciate that in 1966 the warning and waiver requirements mandated by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, did not supersede preexisting constitutional law on the admissibility of confessions; the requirements of *Miranda* simply super-imposed *additional* criteria for admissibility upon that pre-existing law. Distracted by the glitter of this new surface layer of quasi-constitutionality, our case law has tended to ignore the substratum of pre-*Miranda* law which lies undisturbed in bedrock immutability beneath the more volatile overlay of *Miranda*.

### The Factual Setting

The appellant, Bruce D. Kidd, was convicted by a Baltimore City jury of possessing heroin with intent to distribute it. Although the evidence against the appellant was legally sufficient to sustain the conviction, it was by no means overwhelming. At approximately 11 p.m. on May 9, 1975, plainclothes narcotics officers approached a large crowd in the 1700 block of Baker Street. That block was known as a "high-density narcotics area." The appellant, upon whom investigation had not theretofore focused, quickly left the scene. The appellant testified that he was walking toward his car quickly because his daughter had

hurt her knee and he was going to take her to the hospital. One of the arriving officers suspected that the appellant was "dirty" because he was observed running from the scene. The officer testified, "If he wasn't dirty, he wouldn't have ran." Another of the officers observed the appellant drop something. He searched the area and discovered 18 glassine bags of heroin. The appellant denied having discarded the glassine bags of heroin. Into this two-on-one credibility battle there intruded the damaging admission now in issue, made by the appellant to the police, that he was currently a narcotics addict. The error, if such be found, cannot be deemed harmless.

The incriminating statement was made by the appellant to Officer Winkler after the appellant had been arrested and was being booked. There was no testimony that any *Miranda* warnings had ever been given or that any rights had been waived. Such testimony would, indeed, have been superfluous since the State never offered the statement made to Officer Winkler during the course of its case in chief.

The issue first arose during the prosecutor's cross-examination of the appellant, while he was testifying in the course of his defense upon the merits. The triggering question was, "Did you ever tell Officer Winkler that you were a one bag habit man?" A timely objection was interposed. The objection was overruled. A bench conference ensued, at the end of which the trial judge ruled:

> "If there is a confession or an admission or some statement by the defendant that does not comply with *Miranda* rules, you cannot introduce it on direct, but you can if the defendant takes the stand and denied it, then you can rebut his denial by putting on the statement that would not have been admissible had he not taken the stand."

In response to the question, the appellant denied any such conversation with Officer Winkler. In rebuttal, the State called Officer Winkler. He testified, over objection, that the

appellant admitted to him that he was an addict and that he had approximately "a one-bag-a-day habit."

There was never a hearing, out of the presence of the jury or otherwise, on the voluntariness of this statement made to Officer Winkler. It is clear that the trial court, in making its ruling, was relying upon the case of *Harris v. New York*, 401 U. S. 222, 224, 91 S. Ct. 643, 28 L.Ed.2d 1, 4 (1971), which limited the impact of *Miranda* and held that a statement which might be excluded from the State's case in chief because of a *Miranda* violation might nonetheless be received in rebuttal for purposes of impeaching the credibility of a defendant who takes the stand and testifies in a fashion contradicted by the *Miranda*-violative statement:

> "It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards."

In 1975, *Oregon v. Hass*, 420 U. S. 714, 722, 95 S. Ct. 1215, 43 L.Ed.2d 570, 577, reiterated this now undisputed limitation on the application of *Miranda* for purposes of total exclusion:

> "As in *Harris*, it does not follow from *Miranda* that evidence inadmissible against Hass in the prosecution's case in chief is barred for all purposes, always provided that 'the trustworthiness of the evidence satisfies legal standards.' "

### The Questions Before Us

We are called upon to decide whether the latitude countenanced by *Harris v. New York* with respect to a *Miranda* violation extends also to a violation of deeper import. What is meant by the qualifying phrase in *Harris v. New York*: "provided of course that the trustworthiness of the evidence satisfies legal standards"? If there is a deeper problem lurking beneath *Miranda*'s surface, how shall it be

raised and litigated? Are a hearing and ruling required? What is the relevant test? What is the burden of proof? Who has the burden?

### Earlier Intimations

On three earlier occasions, similar storm warnings were raised but the crisis passed over with no more than threatening skies. In *Cooper v. State*, 14 Md. App. 106, 110-116, 286 A. 2d 579, the issue first loomed (albeit in the context of the possible retroactivity of *Harris v. New York*) but it became unnecessary for us to resolve it because, notwithstanding having laid a foundation, the State never offered the arguably infirm prior inconsistent statement. In *Layman v. State*, 14 Md. App. 215, 224-231, 286 A. 2d 559, a question arose about using for impeachment purposes a prior inconsistent statement which allegedly ran afoul of traditional voluntariness requirements. The issue there arose, however, in the context of whether the judge was required to give a defendant an anticipatory ruling. We held that he was not so required. The present question was never faced. Finally, in *Sabatini v. State*, 14 Md. App. 431, 287 A. 2d 511, we did not have to face squarely the issue of whether a hearing is required when the challenged statement is offered for impeachment purposes. Although in that case a preliminary hearing was not held out of the presence of the jury, the evidence bearing on the question of traditional voluntariness was offered before the court and jury alike. We held that in ruling the statement admissible, the judge "at least implicitly" found traditional voluntariness. We further held, upon our independent, constitutional review, that the challenged statement was indeed voluntary. The risk that inheres when the matter is not explored preliminarily out of the presence of the jury did not, therefore, materialize under the circumstances of that case.

### The Doctrinal Analysis of Harris v. New York

The issue now, however, is squarely before us. Indispensable to a principled resolution of the issue, and of the various sub-questions involved therewith, is an

understanding of *Harris v. New York* not in terms of its surface operation but in terms of its doctrinal legitimacy.

If we were dealing with *Miranda* in a vacuum, the trial judge would be correct and we should affirm. As we pointed out in *Bartram v. State,* 33 Md. App. 115, 364 A. 2d 1119 (1976), *"Miranda v. Arizona* is in definite disfavor with the strong majority of the present membership of the institution charged with interpreting the law of the land," and has been significantly eroded in a variety of ways by *Harris v. New York, supra;* by *Oregon v. Hass, supra;* by *Michigan v. Tucker,* 417 U. S. 433, 94 S. Ct. 2357, 41 L.Ed.2d 182 (1974); by *Michigan v. Mosley,* 423 U. S. 96, 96 S. Ct. 321, 46 L.Ed.2d 313 (1975), and by *United States v. Mandujano,* 425 U. S. 564, 96 S. Ct. 1768, 48 L.Ed.2d 212 (1976). *Miranda,* however, is not coextensive with the fundamental constitutional right under the Fifth and Fourteenth Amendments against compelled self-incrimination. The erosion or demeaning of *Miranda* by no means implies the erosion or demeaning of the fundamental constitutional right itself. That right stands as it stood before *Miranda* was ever promulgated. Neither *Harris v. New York* nor *Oregon v. Hass* has eroded it in any sense.

As limiting agents upon the exclusionary power of *Miranda, Harris v. New York* and *Oregon v. Hass* themselves have limitations. A *Miranda*-violative statement may, indeed, be used for impeachment purposes — *"provided of course that the trustworthiness of the evidence satisfies legal standards."* The limitation has a limitation.

What is required conceptually is the appreciation of the difference between a "mere *Miranda*" violation and a more fundamental constitutional violation. See *Bartram v. State, supra* (Part 2A). To understand fully not only 1)' the correctness of the *Harris v. New York* limitation upon *Miranda* but also 2) the limited scope of that limitation, one must turn to the deeper doctrinal analysis of *Michigan v. Tucker, supra.*

In *Michigan v. Tucker,* a statement had been taken from a defendant in clear violation of *Miranda.* That statement led the police to a witness ultimately used by the prosecution in

proving its case. The Supreme Court had to come to grips with the problem of whether a *Miranda* violation could serve as the "primary illegality" which would trigger the "fruit of the poisonous tree" doctrine. In holding that a "mere *Miranda*" violation would not trigger the operation of that doctrine, it was necessary for the Supreme Court to hold that *Miranda* itself was not of constitutional dimensions. It denigrated the *Miranda* rules from the constitutional status of being part and parcel of the right against self-incrimination, treating them rather as "only the prophylactic rules developed to protect that right," 417 U. S. at 439; as a "series of recommended 'procedural safeguards,'" 417 U. S. at 443; as "suggested safeguards," 417 U. S. at 444; as "only . . . the prophylactic standards later laid down by this Court in *Miranda* to safeguard that privilege," 417 U. S. at 446. The Supreme Court held, as was necessary to its decision, that the fundamental privilege against compulsory self-incrimination as such had not been violated:

> "The Court recognized that these procedural safeguards were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected.
>
> . . .
>
> [T]he police conduct here did not deprive respondent of his privilege against compulsory self-incrimination as such, but rather failed to make available to him the full measure of procedural safeguards associated with that right since *Miranda*." 417 U. S. at 444.

It then raised the question of whether a "mere *Miranda*" violation would trigger the "fruit of the poisonous tree" doctrine, while suggesting strongly that a violation of the right against compulsory self-incrimination would most certainly trigger that doctrine:

> "Our determination that the interrogation in this case involved no compulsion sufficient to breach the

right against compulsory self-incrimination does not mean there was not a disregard, albeit an inadvertent disregard, of the procedural rules later established in *Miranda*. The question for decision is how sweeping the judicially imposed consequences of this disregard shall be." 417 U. S. at 445.

Although its holding dealt with the obverse side of the present coin, the holding necessarily implied that a violation of the basic constitutional privilege itself will bar not only the direct use but any indirect use — "the fruits" — of such unconstitutionality:

"This Court has also said, in *Wong Sun v. United States*, 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407 (1963), that the 'fruits' of police conduct which actually infringed a defendant's Fourth Amendment rights must be suppressed. But we have already concluded that the police conduct at issue here did not abridge respondent's constitutional privilege against compulsory self-incrimination, but departed only from the prophylactic standards later laid down by this Court in *Miranda* to safeguard that privilege." 417 U. S. at 445-446.

In *Bartram v. State, supra*, we pointed out that "[t]he distinction between a 'mere *Miranda*' violation, the product of which may be used in rebuttal or for collateral purposes, and a 'primary illegality' of constitutional dimensions under the 'fruit of the poisonous tree' doctrine is very clear." See also *Ryon v. State*, 29 Md. App. 62, 349 A. 2d 393. In *In Re Appeal No. 245, Term 1975*, 29 Md. App. 131, 349 A. 2d 434, Chief Judge Orth wrote for this Court, at 29 Md. App. 149, 150:

"In both *Harris* and *Tucker*, the misconduct of the police violated only the prophylactic rules developed by *Miranda* to protect the right against self-incrimination. . . . In the instant case, we do not have official action pursued in complete good faith, with the confession rendered inadmissible by

the mere inadvertent omission of one of the prophylactic *Miranda* warnings. . . . The rationale of the holdings in *Harris* and *Tucker* does not apply to make admissible the tangible evidence obtained here, any more than it would apply to make admissible evidence derived from a confession not voluntary in the traditional sense."

*In Re Appeal No. 245, supra,* is a beacon light of precedential guidance in this regard because of the clear contrast contained within it. A contested statement was taken from a juvenile. That statement was found to be infirm by both the trial court and by this Court for two distinct reasons. In the first place, there was not an adequate waiver under *Miranda.* At an even more fundamental level, it was held to be involuntary in the constitutional sense because it was the direct and proximate effect of an illegal detention. Quite properly, the confession was suppressed. The confession, however, gave the police a lead to a pair of binoculars, which binoculars were ultimately recovered by them and offered in evidence.[1]

We held that, under the teaching of *Harris v. New York* and *Michigan v. Tucker,* the "mere *Miranda*" violation would not prohibit the use of the *Miranda*-violative statement to furnish informational leads to the police and that the binoculars would not be suppressed because of the *Miranda* violation. Moving on to matters of more constitutional magnitude, however, we held that when the raw nerve of the right against compulsory self-incrimination was improperly touched by unlawful police action, the gears of the "fruit of the poisonous tree" doctrine were fully engaged and that the binoculars must be suppressed for the basic constitutional violation,[2] even where suppression was not called for for the "mere *Miranda*" violation.

---

1. "[W]e can only conclude that the deputies were led to the binoculars by what appellant told them. There was no evidence sufficient to establish that the deputies learned of the binoculars from a source independent of the confession." 29 Md. App. at 146.

2. "[T]he detention led to the confession and the confession led to the binoculars. Each was the immediate, direct and proximate cause of the other with no break in the causal connection by time or

It is now undisputed that a violation of the Fifth Amendment right against compelled self-incrimination can trigger the "fruit of the poisonous tree" doctrine. *Michigan v. Tucker, supra; In Re Appeal No. 245, supra; Ryon v. State, supra; Bartram v. State, supra.* Cf. *Garrison v. State,* 28 Md. App. 257, 345 A. 2d 86; *Everhart v. State,* 274 Md. 459, 337 A. 2d 100; *Carter v. State,* 274 Md. 411, 337 A. 2d 415. It is also undisputed that once the "fruit of the poisonous tree" doctrine comes into play, the use of a tainted "fruit" would be barred for all purposes, for impeachment purposes in rebuttal just as surely as for more directly inculpatory purposes in the case in chief. The heart of the doctrine was expressed by Justice Holmes in the case that gave birth to the doctrine, *Silverthorne Lumber Co. v. United States,* 251 U. S. 385, 392, 40 S. Ct. 182, 64 L. Ed. 319 (1920):

> "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all."

See also *Nardone v. United States,* 308 U. S. 338, 60 S. Ct. 266, 84 L. Ed. 307 (1939), and *Wong Sun v. United States,* 371 U. S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963). The Court of Appeals spoke very clearly to this point in *Everhart v. State, supra,* at 274 Md. 481-482:

> "The doctrine of the 'fruit of the poisonous tree' extends the scope of the exclusionary rule to bar not only evidence directly seized, but also evidence indirectly obtained as a result of information learned or leads obtained in the unlawful search; *in its broadest sense it prohibits the prosecution from using in any manner, prejudicial to the accused,* information derived from facts learned as a result of the unlawful acts of law enforcement agents." (Emphasis supplied)

---

circumstances. The primary taint flowed down to the confession and from it to the binoculars. The State did not establish that the binoculars were come at by means sufficiently distinguishable to be purged of the primary taint. Under the *Wong Sun* doctrine, the binoculars were inadmissible in the hearing on the delinquency of appellant, and we so hold." 29 Md. App. at 147.

It follows ineluctably that if an involuntary statement cannot be used for even so remote a purpose as supplying a lead to further investigation, it may not be used more directly to impeach credibility. *Harris v. New York* and *Oregon v. Hass* do not, therefore, authorize such use of a questioned statement, even for the limited purpose of impeachment in rebuttal, when the initial infirmity is constitutional involuntariness itself and not mere non-compliance with the suggested prophylactic rules of *Miranda.*

The analysis has been pursued perhaps to the point of tedium. A conceptual grasp of the crucial distinction between the natures of the violations, however, is indispensable to a principled resolution of the attendant procedural questions. With the distinction now firmly fixed in mind, we are equipped to consider the procedural sequelae.

## The Procedural Questions

Since *Harris v. New York* cannot immunize even for limited purposes a statement made to the police where the contagion is of constitutional virulence, attention must be focused upon the procedural requirements for diagnosing such constitutional contagion. When the State seeks to use a statement against a defendant, even for the more limited purpose of impeachment, must the State show anything absent an objection? Is more required of a defendant by way of challenge than a bare objection? Is a judicial determination required? Once the issue is raised, what is the test? What is the burden of proof? To whom is the burden allocated?

The clue to the solution is that we are not addressing a new problem but rather an old problem which we have tended to neglect in the rush of more topical recent events. We must look beneath the transient sod into the abiding subsoil. The answers are what they have always been since Maryland began litigating the subject of voluntariness in 1873 with *Nicholson v. State,* 38 Md. 140, and since the Supreme Court began litigating the subject of voluntariness

in 1936 with *Brown v. Mississippi*, 297 U. S. 278, 56 S. Ct. 461, 80 L. Ed. 682. Upon this massive body of case law, *Miranda* was superimposed by the Supreme Court in 1966 as an additional set of "procedural safeguards." *Miranda* was not a substitute for the earlier and more fundamental safeguards and did not work any change with respect to them. It simply superimposed a veneer of additional prophylaxis. The effect of *Harris v. New York* is simply upon that prophylactic layer and does not alter the constitutional substratum which remains, procedurally as well as substantively, what it has always been.

### 1. Must the Defendant Interpose an Objection? — Yes.

With respect to that substratum, it is and always has been clear that no issue arising out of the admissibility of a confession, for any purpose, will be preserved for appellate review absent an objection by the defendant at the time the confession is offered. Maryland Rule 1085; *Tucker v. State*, 237 Md. 422, 425, 206 A. 2d 691; *Gaudio and Bucci v. State*, 1 Md. App. 455, 462-463, 230 A. 2d 700; *Kleinbart v. State*, 2 Md. App. 183, 209, 234 A. 2d 288; *Bitzer v. State*, 4 Md. App. 415, 419, 243 A. 2d 33; *Hall v. State*, 6 Md. App. 356, 360-361, 251 A. 2d 219. Neither *Miranda* nor the *Harris v. New York* limitation upon *Miranda* had any effect upon this basic procedural rule.

### 2. Is a Bare Objection Enough? — Yes.

With further respect to that substratum, it is and always has been clear "that general objection . . . to the admission of the confession, is sufficient . . . and that grounds for the objection need not be stated unless requested by the court, Maryland Rule 522 d 1, made applicable to criminal causes by Rule 725 f." [3] *Bates v. State*, 32 Md. App. 108, 112-113, 359 A. 2d 106. See also *Robert v. State*, 220 Md. 159, 167-168, 151 A. 2d 737, 741; *Giles v. State*, 10 Md. App. 593, 598, 271 A. 2d 766, 769. Neither *Miranda* nor the *Harris v.*

---

[3] "We think that the objection may be regarded as encompassing both the voluntariness of the confession and the taint derived from the illegal arrest." Judge Singley (specially assigned), speaking for this Court, at 32 Md. App. 113.

*New York* limitation upon *Miranda* had any effect upon this basic procedural rule.

*3. Are a Hearing and a Judicial Ruling Required? — Yes.*

With further respect to that substratum, it is and always has been clear that when a defendant makes timely objection to the admission of a statement taken from him by the police, the trial judge must conduct a hearing and must determine as a matter of law whether the challenged statement will or will not be admitted into evidence. As we said in *Mulligan v. State,* 10 Md. App. 429, 432, 271 A. 2d 385:

> "The trial judge's conclusion that the confession was voluntary must appear from the record with unmistakable clarity."

We spoke to a similar effect in *Barnhart v. State,* 5 Md. App. 222, 226, 246 A. 2d 280:

> "A defendant's constitutional rights are violated when his challenged confession is introduced without the preliminary decision by the trial judge of its voluntariness after an adequate hearing. *Jackson v. Denno,* 378 U. S. 368."

As Chief Judge Murphy very forcefully said for this Court in the appropriately named case of *Murphy v. State,* 8 Md. App. 430, 436-437, 260 A. 2d 357:

> "But, as heretofore indicated, the appellant later entered a timely general objection to the admissibility of the confession which had the effect of challenging the confession on the broader constitutional ground that it was not freely and voluntarily made. See Maryland Rules 522 and 725f. Under *Jackson v. Denno, supra,* it was incumbent upon the trial judge to make a preliminary finding of voluntariness before admitting the confession in evidence, and that finding must, under *Sims v. Georgia, supra,* 'appear from the record with unmistakable clarity.' The ra-

tionale of these cases is plainly such that the trial judge must do more than, as here, simply overrule the objection — his conclusion that the confession was voluntary must, we repeat, appear from the record 'with unmistakable clarity.' And this is so even where, as here, the only evidence in the case pertaining to the voluntariness of the statement showed that it was freely and voluntarily made; the trial judge still must indicate 'with unmistakable clarity,' that he believes such evidence and therefore finds the confession to be a voluntary one."

See also *Lynch v. State,* 9 Md. App. 441, 443, 265 A. 2d 283.

*Jackson v. Denno,* 378 U. S. 368, 84 S. Ct. 1774, 12 L.Ed.2d 908 (1964), is the constitutional wellspring for the procedural requirements surrounding the issue of voluntariness. That a hearing is required is clear:

"Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." 378 U. S. at 376-377.

In *Sims v. Georgia,* 385 U. S. 538, 87 S. Ct. 639, 17 L.Ed.2d 593 (1967), the trial judge there, as the trial judge here, overruled a defense objection and admitted a confession into evidence. There, as here, there was no determination of the question of voluntariness. In reversing, the Supreme Court said, at 385 U. S. 544:

"Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity. Here there has been absolutely no ruling on that issue . . ."

See also *Boles v. Stevenson,* 379 U. S. 43, 85 S. Ct. 174, 13

L.Ed.2d 109 (1964). And see *Mulligan v. State*, 10 Md. App. 429, 432, 271 A. 2d 385.

In *Jackson v. Denno*, the Supreme Court pointed out that a fair hearing and a judicial ruling are required both to insure that the jury never hears the substance of or knows of the existence of an involuntary confession and to put upon the record the necessary material for later judicial review:

> "In jurisdictions following the orthodox rule, under which the judge himself solely and finally determines the voluntariness of the confession, or those following the Massachusetts procedure, under which the jury passes on voluntariness only after the judge has fully and independently resolved the issue against the accused, the judge's conclusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary. Moreover, his findings upon disputed issues of fact are expressly stated or may be ascertainable from the record." 378 U. S. at 378-379.

Neither *Miranda* nor the *Harris v. New York* limitation upon *Miranda* had any effect upon this basic procedural requirement.

### 4. What is the Constitutional Test? — Voluntariness.

With further respect to that substratum, it is and always has been clear that, above and beyond any latter-day catechism of explicit warnings, a statement made by a defendant to the authorities must be voluntary, to wit, not "compelled" within the contemplation of the Fifth Amendment to the United States Constitution or Article 22 of the Maryland Declaration of Rights. The Maryland test for voluntariness was well stated by the Court of Appeals in *Smith v. State*, 189 Md. 596, 603-604, 56 A. 2d 818:

> "The law regarding the admissibility of a confession has been stated by this court many times. We will restate the rule. Before a confession

can be admitted in evidence, the State must show, to the satisfaction of the court, [4] that it was the free and voluntary act of an accused; that no force or coercion was exercised by the officers obtaining the confession, to cause the accused to confess; that no hope or promise was held out to an accused for the purpose of inducing him to confess."

See also *Linkins v. State,* 202 Md. 212, 222, 96 A. 2d 246; *Hall v. State,* 223 Md. 158, 169, 162 A. 2d 751; *Ralph v. State,* 226 Md. 480, 487, 174 A. 2d 163. The same test was well articulated for this Court by then Chief Judge Murphy in *Robinson v. State,* 3 Md. App. 666, 670-671, 240 A. 2d 638:

"It is well settled that in order for a confession to be admissible into evidence against an accused, the State must prove that it was voluntary and not the product of force, threats, promises or inducements. *Abbott v. State,* 231 Md. 462; *Cooper v. State,* 1 Md. App. 190. Otherwise stated, to be voluntary, a statement cannot be 'extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' *Malloy v. Hogan,* 378 U. S. 1, 7; *Lyter v. State,* 2 Md. App. 654."

See also *Wiggins v. State,* 4 Md. App. 95, 105-106, 241 A. 2d 424; *Barnhart v. State, supra,* at 5 Md. App. 224-225; *Bates v. State, supra,* at 32 Md. App. 113-114.

Federal constitutional law, as interpreted by the Supreme Court, points unmistakably in the same direction. A voluntary statement (subject only to the additional requirements of *Miranda* when offered in chief) is always admissible for all purposes. The pivotal criterion of voluntariness was always rooted in the Fifth Amendment proscription against compulsory self-incrimination in cases arising in the federal courts. In state cases, there has been

---

4. It is now, of course, clear since *Lego v. Twomey,* 404 U. S. 477, 92 S. Ct. 619, 30 L.Ed.2d 618 (1972), that the burden is that of a preponderance of the evidence and not that of demonstrating to the satisfaction of the court.

an evolution in the constitutional predicate for applying the test but no fundamental change in the test itself. Beginning with *Brown v. Mississippi*, 297 U. S. 278, 56 S. Ct. 461, 80 L. Ed. 682, in 1936, and continuing over the course of some 28 years involving the consideration of some 35 cases, constitutional review of the admissibility of confessions in state cases was grounded in the due process clause of the Fourteenth Amendment. The decision of the Supreme Court in *Gideon v. Wainwright*, 372 U. S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963), that the right to counsel provision of the Sixth Amendment was applicable to the states through the due process clause presented the Supreme Court with the opportunity to shift its review of confession cases in state courts to a more specific launching pad. For a brief period in 1964, it experimented with the right to counsel provision of the Sixth Amendment as the appropriate constitutional lever in *Massiah v. United States*, 377 U. S. 201, 84 S. Ct. 1199, 12 L.Ed.2d 246 (1964), and *Escobedo v. Illinois*, 378 U. S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964). That experiment was short-lived. *Malloy v. Hogan*, 378 U. S. 1, 84 S. Ct. 1489, 12 L.Ed.2d 653, also decided in 1964, held for the first time that the privilege against compelled self-incrimination under the Fifth Amendment was also binding upon the states through the due process clause of the Fourteenth Amendment. With that far more appropriate point of departure then available, coupled with the opportunity to base the federal and the state confession cases upon the same constitutional footing, the Supreme Court by 1966 began grounding its review of confession cases in state courts in the compulsory self-incrimination clause specifically rather than in the due process clause generally or in the now abandoned ground of the right to counsel clause.[5] Throughout all of the shifts in the basis for review,

---

5. The status of *Massiah* and *Escobedo* as evolutionary relics that were tried and failed is clear from an overview of subsequent Supreme Court activity in the area. They are like the mother's two proverbial sons, one of whom ran off to sea and the other of whom became Vice-President and neither of whom was ever heard from again. Neither *Massiah* nor *Escobedo*, to be sure, was ever cleanly overruled. They did not have to be. Like Japanese garrisons bypassed in the leapfrogging strategy in the South Pacific, they simply withered upon an untended vine. Or they sleep, like Dracula, not alive but yet undead. When they arise periodically in lonely

however, the criterion upon review remained "voluntariness." See generally *Schneckloth v. Bustamonte*, 412 U. S. 218, 223-227, 93 S. Ct. 2041, 36 L.Ed.2d 854, 860-862 (1973).

There can be no doubt that the crucial constitutional standard is voluntariness. Some of the very early case law, in the Supreme Court and locally, did speak of untrustworthiness as the thing to be feared and guarded against when heavy-handed methods of interrogation were employed. See *Stein v. New York*, 346 U. S. 156, 172, 73 S. Ct. 1077, 97 L. Ed. 1522, 1536 (1953). On some occasions, the terms "voluntariness" and "trustworthiness" were used with loose and uncritical interchangeability. Indeed, the critical qualifying phrase for present purposes from *Harris v. New York* uses "trustworthiness" — ". . . provided of course that the trustworthiness of the evidence satisfies legal standards." Notwithstanding semantic lapses, it is inescapably clear that to the extent to which there is any difference between "voluntariness" and "trustworthiness," the indisputable and inescapable constitutional standard is "voluntariness." *Culombe v. Connecticut*, 367 U. S. 568, 602, 81 S. Ct. 1860, 6 L.Ed.2d 1037 (1961), was unequivocal:

> "The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been

juridical byways, they are very disturbing. One longs for a clean stake to the heart.

*Massiah* has never been mentioned again. Fate has not been so kind to *Escobedo*. "[T]he Court has limited the holding of *Escobedo* to its own facts." *Kirby v. Illinois*, 406 U. S. 682, 689, 92 S. Ct. 1877, 32 L.Ed.2d 411, 417 (1972). "As we have noted previously, *Escobedo* is not to be broadly extended beyond the facts of that particular case." *Michigan v. Tucker*, 417 U. S. 433, 438, 94 S. Ct. 2357, 41 L.Ed.2d 182, 189 (1974). See also *Johnson v. New Jersey*, 384 U. S. 719, 733-734, 86 S. Ct. 1772, 16 L.Ed.2d 882, 892 (1966), and *Frazier v. Cupp*, 394 U. S. 731, 739, 89 S. Ct. 1420, 22 L.Ed.2d 684 (1969). Appropriate is the comment of Professor Max Radin that when courts note that another case "stood on its own facts," the courts are "administering euthanasia to their nonviable progeny." 6 St. John's Law Qu. Rev. 157.

overborne and his capacity for self-determination critically impaired, the use of his confession offends due process."

Justice Frankfurter was equally explicit in pinpointing the standard in *Rogers v. Richmond*, 365 U. S. 534, 540-541, 81 S. Ct. 735, 5 L.Ed.2d 760 (1961):

"Our decisions under that Amendment have made clear that convictions following the admission into evidence of confessions which are involuntary, *i.e.*, the product of coercion, either physical or psychological, cannot stand. This is so not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system — a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth."

The notion that the relevant concern might be trustworthiness rather than voluntariness was met squarely in *Jackson v. Denno*, 378 U. S. 368, 383-386, 84 S. Ct. 1774, 12 L.Ed.2d 908, 919-921 (1964), and was buried:

"[T]he premise underlying the *Stein* opinion that the exclusion of involuntary confessions is constitutionally required solely because of the inherent untrustworthiness of a coerced confession. It followed from this premise that a reliable or true confession need not be rejected as involuntary and that evidence corroborating the truth or falsity of the confession and the guilt or innocence of the accused is indeed pertinent to the determination of the coercion issue. . . .

This underpinning of *Stein* . . . was unequivocally put to rest in *Rogers v. Richmond, supra,* where it was held that the reliability of a confession has

nothing to do with its voluntariness — proof that a defendant committed the act with which he is charged and to which he has confessed is not to be considered when deciding whether a defendant's will has been overborne. . . .

It is now inescapably clear that the Fourteenth Amendment forbids the use of involuntary confessions not only because of the probable unreliability of confessions that are obtained in a manner deemed coercive, but also because of the 'strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will' . . ." (Citations omitted)

As recently as 1972, *Lego v. Twomey*, 404 U. S. 477, 484-485, 92 S. Ct. 619, 30 L.Ed.2d 618, 624-625, spoke to the same point:

"We noted in *Jackson* that there may be a relationship between the involuntariness of a confession and its unreliability. But our decision was not based in the slightest on the fear that juries might misjudge the accuracy of confessions and arrive at erroneous determinations of guilt or innocence. That case was not aimed at reducing the possibility of convicting innocent men.

Quite the contrary, we feared that the reliability and truthfulness of even coerced confessions could impermissibly influence a jury's judgment as to voluntariness. The use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles. *Rogers v. Richmond* . . . The procedure we established in *Jackson* was designed to safeguard the right of an individual, entirely apart from his guilt or innocence, not to be compelled to condemn himself by his own utterances."

Neither *Miranda* nor the *Harris v. New York* limitation

upon *Miranda* had any effect upon this basic formulation of the applicable test.

5. *What is the Burden of Proof? — A Preponderance of the Evidence.*

With further respect to that substratum, it is and always has been clear (at least since *Lego v. Twomey*, 404 U. S. 477, 92 S. Ct. 619, 30 L.Ed.2d 618, in 1972) that the burden of proof on the admissibility issue, either pretrial or during trial in or out of the presence of the jury, is that of a preponderance of the evidence. *Mulligan v. State*, 18 Md. App. 588, 597-602, 308 A. 2d 418; *Ponds v. State*, 25 Md. App. 162, 335 A. 2d 162; *Felde v. State*, 26 Md. App. 15, 20-23, 336 A. 2d 823; *Hebb v. State*, 31 Md. App. 493, 356 A. 2d 583; *Bates v. State, supra,* at 32 Md. App. 113. Neither *Miranda* nor the *Harris v. New York* limitation upon *Miranda* had any effect upon this basic procedural rule.

6. *To Whom is the Burden Allocated? — The State.*

With final respect to that substratum, it is and always has been clear that the burden of proving voluntariness is allocated to the State. In the archetypal case of *Nicholson v. State*, 38 Md. 140, the Court of Appeals said as early as 1873, at 153:

> "The law is also well settled that the *onus* is upon the prosecutor, to show affirmatively, that the confession proposed to be offered was not made in consequence of an improper inducement."

The allocation was clearly stated by the Court of Appeals in *Peters and Demby v. State*, 187 Md. 7, 14, 48 A. 2d 586:

> "The burden of proof is, of course, upon the State to show that any confession is freely and voluntarily made, and is not obtained by threats or inducements."

The Court of Appeals restated the allocation of the burden, as it had stated it many times before and has restated it

many times since, in *Jones v. State,* 188 Md. 263, 270, 52 A. 2d 484:

> "In Maryland the burden of proof is on the State to show affirmatively that a confession was freely and voluntarily made, and was not obtained by any improper inducements. *Hammond v. State,* 174 Md. 347, 198 A. 704; *Wright v. State,* 177 Md. 230, 9 A. 2d 253; *Taylor v. State,* 187 Md. 306, 49 A. 2d 787."

This Court has consistently followed suit. See, among many others, *Robinson v. State, supra,* at 3 Md. App. 670-671; *Wiggins v. State, supra,* at 4 Md. App. 105; *Barnhart v. State, supra,* at 5 Md. App. 224; *Edwards v. State, infra,* at 7 Md. App. 113; *Murphy v. State, supra,* at 8 Md. App. 434.

With respect to that hearing on voluntariness mandated by *Jackson v. Denno, Lego v. Twomey, supra,* went on to establish that the burden of proof is that of a preponderance of the evidence and furthermore that the burden is allocated to the state, holding at 404 U. S. 489:

> "To reiterate what we said in *Jackson:* when a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, *the prosecution must prove* at least by a preponderance of the evidence that the confession was voluntary." (Emphasis supplied)

Neither *Miranda* nor the *Harris v. New York* limitation upon *Miranda* had any effect upon this basic allocation of the burden of proof.

### Voluntariness Hearing Not Obviated by Miranda

It is furthermore clear that the demonstration of voluntariness as a prerequisite to the admission of a challenged statement was not obviated by the additional "warning and waiver" examination mandated by *Miranda* nor was the more basic test superseded by or subsumed into its implementary additive. Judge Powers well articulated

the distinctness of the criteria in *Greenwell v. State*, 32 Md. App. 579, 363 A. 2d 555, 557:

> "Two different constitutional principles may bear, simultaneously, or independently of each other, on the question of admissibility of that evidence. One is that it must be shown that the statement was not induced by force, threats, or promises, but was made freely and voluntarily. The other is that when the statement stems from a custodial interrogation, it must be shown that the accused knew and understood that he had a constitutional right not to be compelled to be a witness against himself, and that he voluntarily, knowingly, and intelligently waived his rights."

We made it clear in *Edwards v. State*, 7 Md. App. 108, 113, 253 A. 2d 764, that even following an examination under *Miranda*, the more basic issue must still be addressed as a precondition for admissibility:

> "Of course, when a confession is challenged, the State is additionally required to adduce proof of traditional voluntariness, *viz.*, that the statement was not obtained by force, violence, threats, inducements or promises."

See also *Robinson v. State, supra,* at 3 Md. App. 671; *Wiggins v. State, supra,* at 4 Md. App. 105; *Barnhart v. State, supra,* at 5 Md. App. 224-225; *Murphy v. State, supra,* at 8 Md. App. 434-435. As Judge Singley pointed out for this Court in *Bates v. State, supra,* the satisfaction of *Miranda* is by no means all that is required by way of legitimating a challenged statement, saying at 32 Md. App. 113-114:

> "At the suppression hearing, the trial court determined, from a preponderance of the evidence, that Bates was given his *Miranda* warnings and the confession to the Weaver's Texaco break-in was voluntary. There was, however, no finding that the illegal arrest did or did not taint the confession.
>
>     . . .

The trial court's inquiry at the suppression hearing, however, is not completed upon a finding that *Miranda* warnings were given and the confession was voluntarily made. . . .

What we propose to do in the present case is to reverse Bates' conviction, for we are convinced that the State failed to satisfy its burden of showing, at the suppression hearing, that the confession did not result from exploitation of the illegal arrest . . . ."

## *No Distinction Between Using a Statement Upon the Merits and Using it to Impeach Credibility*

In the present case, it is undisputed that a statement made by the appellant to the police was received in evidence against him at his trial for the purpose of impeaching his credibility. It is undisputed that he objected to the introduction of that statement and that his objection was overruled. It is undisputed that he was afforded no hearing whatsoever upon the issue of voluntariness. It is undisputed that the trial judge did not rule, and indeed had nothing upon which to rule, on the subject of voluntariness. It is undisputed that the State did not carry its burden of proving voluntariness by any standard.

Of immediate concern to us is the question of whether this constitutional criterion of voluntariness applies to all statements taken from a defendant by the police rather than to only those statements offered in chief upon the issue of guilt or innocence. *Miranda* itself is instructive here. Although its recommended procedural safeguards to defang the potentially deadly element of compulsion have been significantly neutralized, its definition of what constitutes self-incrimination stands undisturbed. In this regard, it said at 384 U. S. 477:

"[N]o distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements

> merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word. . . ."

What is there made explicit in *Miranda* is implicit in the clear command of *Jackson v. Denno*, at 378 U. S. 376:

> "It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, *in whole or in part*, upon an involuntary confession, without regard for the truth or falsity of the confession, *Rogers v. Richmond*, 365 U. S. 534, 5 L.Ed.2d 760, 81 S. Ct. 735, and even though there is ample evidence aside from the confession to support the conviction." (Emphasis supplied)

The federal constitutional law has never drawn a distinction between using an unconstitutionally obtained statement on the merits of guilt or innocence and using it tangentially to influence that decision upon the merits. The massive and immemorial body of Maryland common law — much of it grounded directly in Article 22 of the Declaration of Rights proscribing compelled self-incrimination and the remainder of it interpreting and applying parallel federal provisions — has never drawn a distinction between using an unconstitutionally obtained statement on the merits of guilt or innocence and using it tangentially to influence that decision upon the merits. When the basic constitutional right is involved, we see no logical distinction that could be drawn.

Nor do we see anything logically persuasive in the suggestion by the State that the appellant must specify that he is objecting on the grounds of traditional involuntariness before he is entitled to a hearing on that issue.[6] Although the case law, here and elsewhere, has of late been almost totally

---

6. *See* Bailey v. State, 263 Md. 424, 428, 283 A. 2d 360.

monopolized by *Miranda* considerations, the more basic criteria have not been superseded or obliterated. When a defendant objects to a statement offered against him in chief, he is not required to specify that he is objecting on basic constitutional grounds rather than objecting exclusively upon *Miranda* grounds. A general objection has always been enough to put the State to its burden of proving admissibility. *Miranda* has not preempted the field when a statement is offered upon the merits; neither has it preempted the field when a statement is offered for impeachment purposes. An objection to admissibility is all that is required to put the State to its proof.

The State's effort to disengage the statement here in question from the constitutional obligations otherwise binding on statements made to the police is unavailing for two reasons.

### 1. *Differing Uses of the Statement Do Not Support Differing Examinations of the Privilege*

The State would have us believe that because a prior inconsistent statement is considered by the jury for the limited purpose of impeaching credibility, there is not inherent in the jury's hearing of the statement that same potential for residual harm as when they hear an involuntary statement upon the merits. This argument attributes more sophistication to the jury than the Supreme Court is willing to credit. *Jackson v. Denno* discounted the ability of a jury to factor out an involuntary confession even under clear instructions from the Court to do so, saying at 378 U. S. 388:

> "Under the New York procedure, the fact of a defendant's confession is solidly implanted in the jury's mind, for it has not only heard the confession, but it has been instructed to consider and judge its voluntariness .... If it finds the confession involuntary, does the jury — indeed, can it — then disregard the confession in accordance with its instructions? If there are lingering doubts about the sufficiency of the other evidence, does the

jury unconsciously lay them to rest by resort to the confession? Will uncertainty about the sufficiency of the other evidence to prove guilt beyond a reasonable doubt actually result in acquittal when the jury knows the defendant has given a truthful confession."

Indeed, in *Bruton v. United States*, 391 U. S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court recognized "the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt," and held that instructions from the court cannot cure the judicial harm flowing from a jury's knowledge of a defendant's confession. The Court said at 391 U.S. 128-129:

> "*Delli Paoli* assumed that this encroachment on the right to confrontation could be avoided by the instruction to the jury to disregard the inadmissible hearsay evidence. But, as we have said, that assumption has since been effectively repudiated. . . . [W]e expressly rejected the proposition that a jury, when determining the confessor's guilt, could be relied on to ignore his confession of guilt should it find the confession involuntary."

It went on to hold at 391 U. S. 135:

> "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."

Both *Jackson v. Denno* and *Bruton* quoted with approval from the dissenting opinion of Justice Frankfurter in *Delli Paoli v. United States*, 352 U. S. 232, 248, 77 S. Ct. 294, 1 L.Ed.2d 278, 289 (1957), where he put the proposition squarely:

> "The Government should not have the windfall of having the jury be influenced by evidence against a

defendant which, as a matter of law, they should not consider but which they cannot put out of their minds."

Both *Jackson v. Denno* and *Bruton* also quoted with approval from the concurring opinion of Justice Jackson in *Krulewitch v. United States*, 336 U. S. 440, 453, 69 S. Ct. 716, 93 L. Ed. 790, 799 (1949), where he stated even more forcefully:

"The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction."

As recently as *Lego v. Twomey, supra,* the Supreme Court reaffirmed its conviction that a jury could not be relied upon to factor out of its decision-making process a confession which may have been constitutionally tainted, saying at 404 U. S. 483:

"Precisely because confessions of guilt, whether coerced or freely given, may be truthful and potent evidence, we did not believe a jury could be called upon to ignore the probative value of a truthful but coerced confession . . . ."

We hold that the mere fact that a challenged admission has been offered for impeachment purposes rather than upon the merits does not diminish its potential for harm. It is now firmly established, under our own case law as well as that of the Supreme Court, that if a jury even hears of the fact of a confession which the judge rules inadmissible, a judge's instructions to them to disregard it entirely cannot be relied upon to vitiate the potential taint. A judge's instructions to disregard utterly the confession of a non-testifying codefendant similarly may not be relied·upon.[7] *A fortiori,* an instruction to consider a possibly

---

7. As to the inefficacy of instructions to foreclose the damage when a sensitive constitutional nerve has been touched, *Bruton* quoted with approval several judicial observations of Judge Learned Hand. In *Nash v. United States,* 54 F. 2d 1006, 1007, Judge Hand referred to a limiting instruction as a "recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody else's." In *Delli Paoli v.*

unconstitutional admission for limited purposes of impeaching credibility cannot be relied upon as a guarantee that the unconstitutional taint will not affect the judgment upon the merits. If an instruction to disregard utterly will not suffice, an instruction to compartmentalize and disregard in part is even more clearly ineffectual.

In *Hutchinson v. State,* 9 Md. App. 41, 45-47, 262 A. 2d 321, we held that neither a jury nor a judge sitting as a jury could be relied upon to disregard an unconstitutionally obtained confession. In overturning that decision, the Court of Appeals in *State v. Hutchinson,* 260 Md. 227, 271 A. 2d 641, did not disagree with our statement that a jury could not so be relied upon, but proceeded to distinguish a judge as fact finder from a lay jury of fact finders. Although dealing with the other side of the coin, the full import of the Court of Appeals' decision in *State v. Hutchinson* is that a lay jury, unlike a legally trained judge, cannot factor out of its decision-making process the knowledge of a constitutionally tainted confession.

Indeed, in *Franklin v. State,* 6 Md. App. 572, 578, 252 A. 2d 487, we refused to distinguish between what is required for offering an admission upon the merits and what is required for offering it for the limited purpose of impeachment:

> "The fact that appellant's admissions may have been used for the purpose of impeaching his credibility as a witness, rather than as substantive evidence of his guilt, does not, in our judgment, dispense with the requirement that the State affirmatively show on the record that the statement was in compliance with the requirements of [the Constitution]."

In *Franklin,* to be sure, we were relying upon the mandate of

---

*United States,* 229 F. 2d 319, 321, Judge Hand referred to a limiting instruction as a "placebo," medically defined as "a medicinal lie."

In *"Some Problems of Proof under the Anglo-American System of Litigation,"* (1956), Professor Edmund Morgan suggests, at 105, that the use of limiting instructions fosters an inconsistent attitude toward juries by "treating them at times as a group of low-grade morons and at other times as men endowed with a superhuman ability to control their emotions and intellect."

*Miranda.* If, however, even the prophylactic command of *Miranda* compelled such a conclusion on our part, how infinitely more so would the underlying constitutional verity of which *Miranda* is but a surface guarantee. And see *Smith v. State,* 189 Md. 596, 606, 56 A. 2d 818.

### 2. The Harris v. New York Distinction Has No Constitutional Footing

The second thrust of the State's argument that the full procedural safeguards are not mandated when the challenged statement is offered for the more limited purpose is a straight and uncritical reliance upon *Harris v. New York.* The argument, based upon analogy, is that if a statement which offends *Miranda* may nonetheless be used to impeach credibility, so may a statement which offends the traditional voluntariness requirement. The argument ignores the doctrinal underpinnings of *Harris v. New York,* more fully explained in *Michigan v. Tucker.* As we have already more fully discussed, *Michigan v. Tucker* predicates the *Harris v. New York* limitation on *Miranda* upon the fact that a "mere *Miranda*" violation is not constitutional in dimension. It is the unmistakable import of *Michigan v. Tucker* that if a challenged statement failed to pass basic constitutional muster, it could not be offered even for the limited purpose of impeaching credibility. If the Constitution itself were offended, the "fruit of the poisonous tree" doctrine would be fully operational. If a constitutional issue were involved, all of the procedural guarantees of *Jackson v. Denno* and *Lego v. Twomey* would be fully applicable. That distinction is the *sine qua non* of *Harris v. New York.* Notwithstanding a surface similarity, the analogy of the present case, involving a possible constitutional violation, to a *Harris v. New York* situation, involving a "mere *Miranda*" violation, is simply inapt. See *Bartram v. State, supra; Ryon v. State, supra; In Re Appeal No. 245, September Term, 1975, supra.*

In summation, the law is:

1. *When a defendant makes a general objection to the* admission of a statement by him to the police, whether

offered upon the merits or for a more limited purpose, the State has the affirmative burden of proving by a preponderance of the evidence that the statement is admissible. Prudence would dictate that a hearing on the issue of admissibility be conducted out of the presence of the jury, but a reversal will not be called for, notwithstanding the risk, if the statement is ultimately ruled to be admissible.

2. *With respect to the variety of determinations that may be made by the judge at the admissibility hearing, the following results are possible:*

a. *If the State has demonstrated compliance with Miranda as well as compliance with traditional voluntariness standards, the challenged statement will be admitted upon the merits or for any other relevant purpose;*

b. *If the State has failed to demonstrate compliance with Miranda but has demonstrated compliance with traditional voluntariness standards, the statement will not be admitted upon the merits but may under appropriate circumstances, as outlined in Harris v. New York, be admitted for the limited purpose of impeaching the credibility of a defendant who testifies in a manner contradicted by the statement;*

c. *If the State has failed to demonstrate compliance with traditional standards of voluntariness, the statement will not be admitted for any purpose, regardless of whether Miranda has been complied with or not.*

Under the command of *Gill v. State*, 265 Md. 350, 289 A. 2d 575, we must reverse the conviction in this case and remand for a new trial. *But see Jackson v. Denno, supra,* at 378 U. S. 394-96 and *Boles v. Stevenson, supra,* at 379 U. S. 45-46. Under the circumstances, it is unnecessary to deal with the other contention raised by the appellant.

> *Judgment reversed: case remanded for new trial.*
> *Costs to be paid by Mayor and City Council of Baltimore.*