# STANLEY P. MITCHELL *v.* STATE OF MARYLAND

[No. 815, September Term, 1981.]

*Decided April 8, 1982.*

348

The cause was argued before LISS, █COUCH and BISHOP, JJ.

*Peter M. Levin, Assigned Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *H. Gary Bass, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

On October 14, 1979, Stanley P. Mitchell, appellant, was charged by separate indictments in the Criminal Court of Baltimore with first degree murder of Leo Shapiro, handgun violations, assault with intent to murder Minnie Shapiro, and robbery with a deadly weapon and lesser included charges. Appellant filed several pretrial motions which were heard before the Honorable James W. Murphy. All motions were denied. Appellant was then tried before Judge Murphy and a jury. The trial lasted a total of six days and ended in a mistrial due to a hung jury. Appellant was thereafter retried before Judge Robert I. H. Hammerman and a jury in a trial which lasted for seven days. At the conclusion of the trial appellant was found guilty of first degree/felony

murder, use of a handgun, unlawfully carrying or transporting a handgun, assault with intent to murder, and robbery with a deadly weapon. Appellant was sentenced to life imprisonment on the first degree murder conviction, fifteen years concurrent on the use of a handgun, and three years concurrent on possession of the handgun. The robbery with a deadly weapon and assault with intent to murder charges were held by the trial judge to have merged with the felony/murder. It is from these judgments that this appeal was filed. Appellant raises the following seven issues to be decided by this appeal:

I. Did the trial court err in ruling that the fact that the polygraph examinations given to appellant could not be presented to the jury?

II. Were appellant's statements the involuntary product of inducements by investigators and therefore erroneously admitted?

III. Did the trial court abuse its discretion by permitting the State to call Howard Gersh as a rebuttal witness?

IV. Was improper use permitted of Jeanette Thompson's testimony at appellant's first trial, because there was insufficient foundation established for impeachment by prior inconsistent statements?

V. Was the trial court's instruction of the limited role of the jury as trier of fact inadequate?

VI. Was appellant's representation by trial counsel so inadequate that he was deprived of his Sixth Amendment right to counsel?

VII. Were the prosecutor's remarks in argument beyond the scope of facts in evidence and prejudicial to appellant?

## I.

It would serve no useful purpose to relate the facts of the brutal murder of the victim in this case except as they

become necessary to consider the specific issues raised by appellant.

Appellant initially argues that the trial judge at the retrial erred in ruling *sua sponte* that the jury could not be informed either by the prosecution or defense that polygraph examinations had been given to the defendant on two occasions. He contends that even if the trial court's ruling were correct as to the admissibility of evidence as to the *results* of the polygraph exam, it was nevertheless error to deprive the jury of the information that polygraph examinations were conducted. He suggests that the jury was the final arbiter of the voluntariness of statements made by him to the police and that in performing its function the jury was entitled to have before it all the evidence.

Appellant relies principally upon *Johnson v. State,* 31 Md. App. 303, 355 A.2d 504 (1976). In that case this Court held that it was reversible error to exclude from the jury's consideration of the voluntariness of the appellant's statements the fact that a polygraph was used in obtaining those statements. Judge Lowe, speaking for that Court, said:

> A trial judge may not select which circumstances relative to voluntariness may go to the jury and which may not. Once its preliminary determination of voluntariness is made, see *Jackson v. Denno,* 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)], *all* of the relevant evidence bearing on voluntariness must then be submitted to the jury, *Day v. State,* 196 Md. 384, 399 [76 A.2d 729 (1950)].

> "The practice in this state, approved in many cases, is that the court first hears evidence without the jury to determine whether a confession is voluntary and should be admitted. If it decides to admit it, *the same evidence is then given to the jury,* as it has the final determination, irrespective of the court's preliminary decision, whether or not the confession is voluntary, and whether it should be believed. In so doing, *the jury is entitled to have before*

> it all of the evidence which affects the voluntary character of the document, and which the court passed upon in admitting it." (Emphasis added). [31 Md.App. at 306].

On the face of the facts here recited, it would appear that the ruling of Judge Hammerman limiting the presentation to the jury of the information that defendant had submitted to two polygraph examinations might well be reversible error. However, a closer examination of the facts in *Johnson* and the case at bar requires a different conclusion. *Johnson* is readily distinguishable on the facts from this case. Additionally, *Johnson* predates the decision of the Court of Appeals in *Kelley v. State,* 288 Md. 298, 418 A.2d 217 (1980), where the Court of Appeals held:

> [U]ntil such time as the reliability of this particular type of scientific testing [the polygraph] has been appropriately established to the satisfaction of this Court, testimony which directly or indirectly conveys the results of such tests should not be admitted. [288 Md. at 302].

*Johnson* also predates *Akonom v. State,* 40 Md. App. 676, 394 A.2d 1213 (1978), where we held that the results of a polygraph test cannot be admitted, even by stipulation, until it has first been demonstrated that the underlying process of the polygraph test is scientifically reliable. By relying on *Johnson* for the exclusionary principle we underscored the limited purpose for which admissibility would be recognized. *See Akonom, supra,* at 679.

In distinguishing *Johnson* from the case at bar, it must first be considered that the polygraph tests administered in *Johnson* were used by the police as a psychological tool in the interrogation process. An inculpatory statement was given to the police by the appellant after he had submitted to two polygraph examinations. The officer who conducted the interrogation was also the operator of the lie detector device. The interrogating officer would look at the polygraph results

after each question and advise appellant that he had failed the test and that the officer didn't believe him. The officer also questioned appellant as to what had caused the psychological responses indicating that he had made a false statement. After this procedure had been followed, the interrogator left appellant alone in the room with the polygraph for approximately twenty minutes. Then he returned with a second set of questions and repeated the same process.

Soon afterwards, while the machine was not functioning and appellant and the officer were completely relaxed and talking one-on-one, appellant gave the officer a statement which was inculpatory although short of a confession.

On the basis of the facts of the *Johnson* case as herein recited, we held as follows:

> It is apparent that the use of the deception testing device was intended to produce a psychological effect upon the accused in order to obtain the relevant facts if known by appellant. Appellant's expressed reason for confessing does not gainsay the test's effectiveness. It is clear, however, that the use of such a procedure for that purpose would not as a matter of law require the exclusion of a confession so obtained, [citations omitted], involving a confession after several such tests. Indeed, when these facts became known to the trial judge out of the jury's presence during a suppression hearing, he decided that such circumstances, even in addition to the other factors offered, did not overcome the preponderant proof by the State that the confession was freely and voluntarily given. [Citation omitted]. The judge having made that preliminary finding, the question of voluntariness should have then been submitted to the jury *on the same evidence,* although the jury. is to use a higher standard for determining voluntariness — it must find beyond a reasonable doubt that the confession was freely and voluntarily

given. [Citation omitted]. [Emphasis in original].
[31 Md. App. at 305].

In the instant case, however, the polygraph examinations were not used in the interrogation of Mitchell for the purpose of obtaining a confession. They were used to verify statements volunteered to the police by the appellant, who was not charged with the Shapiro murder at the time of either polygraph examination. Appellant was not a suspect in the Shapiro murder, nor was he at that time being interrogated as a suspect. Nothing in the record indicates that either the appellant or his counsel ever contended that appellant was coerced into making the statements because he was subjected to the polygraph tests. On the contrary, the record reveals that counsel for the appellant agreed that there was no allegation in this case that the polygraph in any manner influenced the defendant in making any inculpatory statements. Counsel sought to have the fact that the polygraph tests were administered to the defendant submitted to the jury because they influenced the police in their conduct toward the defendant.

That the administration of a polygraph test to a defendant may only be revealed to a jury where the issue of the voluntariness of a statement involves the alleged coerciveness of the administration of the test has been emphasized by the Court of Appeals in *Kelley v. State, supra.*

*Johnson* is limited to situations where the issue of voluntariness of a statement is before a jury, and where it is contended that the administering of a polygraph test is relevant to the question of whether the statement was voluntarily given. Only under these circumstances is the jury entitled to have the facts before it in order to assist them in deciding whether it is convinced beyond a reasonable doubt that the statements were voluntary. In the absence of such an issue being generated, however, neither the fact that a polygraph test was administered nor the results of the test should be admitted into evidence. To hold differently would encourage the indulgence by a jury in rank specula-

tion to the detriment of either the State or the defense. Under the circumstances in the instant case, we find no error in the trial judge's ruling.

## II.

Appellant next contends that the trial judge at the suppression hearing erred in failing to suppress the statements which he made to the police. He argues that these statements were induced by promises given by the police officers and an Assistant State's Attorney and were obtained from him without an opportunity to consult with his attorney. A review of the pertinent facts in the record shows that when appellant was arrested for several property crimes, he offered to give the police information about the Shapiro murder. In return for the information, appellant wanted a reduction in bail, the return of his car to his wife, and a transfer out of the Baltimore City Jail. After a consultation between the police and the Assistant State's Attorney, it was agreed that if appellant's information was "good" they would do what they could to honor appellant's requests. It is clear from the record that appellant's car was delivered to his wife and appellant was transferred to Harford County Jail. His bail was not reduced and appellant claims his first statement was induced by the promises of the police, not all of which were kept.

Appellant testified that the second statement, which was incriminating, was involuntary because one of the detectives had promised him that if he said he was the getaway driver, the appellant would not be charged with murder and he would be given immunity before the grand jury. He stated that a number of other promises and threats were made to him by the detectives of the homicide unit and on the basis of these he gave the incriminating statement. He also testified that he asked the police several times to be permitted to call his lawyer, but they would never permit him to do so. The three policemen who were involved in the investigation testified both in direct testimony and as rebuttal witnesses that no

threats or inducements were offered by any of them, individually or by anyone in their presence. They each denied appellant's testimony that he had requested an opportunity to call his lawyer.

Appellant argues that his first nonincriminating statement was induced by the promises of the investigators, one of which was not kept (reduction of bail). He suggests this is governed by *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979). It is clear to us that *Hillard* is factually inapposite to the case at bar. In this case appellant, when arrested on a totally different charge, volunteered to give information about the Shapiro homicide in return for certain things which he requested the police to do for him. Appellant was not a suspect at the time he was questioned nor were the statements the result of a custodial interrogation of appellant for the Shapiro murder. The fact that the police and State's Attorney were unable to secure a reduction of bail would not make appellant's statement involuntary nor would it constitute improper coercion requiring the suppression of the statement.

With respect to the appellant's incriminating statement, there was a sharp conflict between appellant and the State on the issue of whether promises or threats had been made in order to induce the statement. The contradictions in the testimony raised issues of fact to be determined by the trier of the facts who is the judge of the credibility of the witnesses. *See Watson v. State,* 35 Md. App. 381, 370 A.2d 1149 (1977), *aff'd,* 282 Md. 73, 382 A.2d 574, *cert. denied,* 437 U.S. 908, 98 S. Ct. 3100, 57 L.Ed.2d 1140 (1978). The trial court, in a lengthy and well reasoned finding, concluded that he believed the testimony of the police officers. We find no basis for holding that the trial judge erred in denying appellant's motion to suppress.

III.

Appellant next complains that the trial court erred in permitting the Assistant State's Attorney to testify as a

rebuttal witness with respect to whether appellant's wife testified before the grand jury. The issue is a minor matter entirely collateral to the question of appellant's guilt or innocence. Appellant relies on *Dobson v. State,* 24 Md. App. 644, 335 A.2d 124 (1975), which is clearly distinguishable from the case at bar. In *Dobson,* the rebuttal testimony was initiated by the State on cross-examination and was both irrelevant and prejudicial. Here it was the appellant who, in his cross-examination of one of the officers, "opened the door" when he asked whether Mrs. Mitchell had been summonsed to testify before the grand jury. The officer replied that she had been summonsed two times but did not testify on either occasion. Carrying the matter even further, appellant offered testimony by Mrs. Mitchell that she had been summonsed twice but did not testify because "the attorney said he didn't need me." The Assistant State's Attorney was then called in rebuttal and he testified that Mrs. Mitchell had refused to testify before the grand jury because of spousal immunity. Appellant then called Mrs. Mitchell's attorney in surrebuttal. He testified that in his conversations with the State's Attorney he had told him he would advise his client to claim spousal immunity so that he could get more time to investigate the case. This tempest in a teapot was not reversible error since appellant "opened the door" by calling Mrs. Mitchell to testify that the "State's Attorney said he didn't need me." This was sufficient to justify the calling of the witness in rebuttal to explain why she was summonsed and did not testify before the grand jury. *See Tate v. State,* 32 Md. App. 613, 363 A.2d 622 (1976); *Green v. State,* 25 Md. App. 679, 337 A.2d 729 (1975).

## IV.

Appellant contends that the prosecutor failed to lay a sufficient foundation before he impeached defense witness Jeanette Thompson with her prior inconsistent testimony given at appellant's first trial. Appellant made no timely objection at trial. The failure to object amounts to a failure to preserve the issue for appeal. *See* Maryland Rule 1085.

## V.

Appellant urges that although the trial court informed the jury that its instructions regarding appellant's constitutional rights (*i.e.,* as to burden of proof, reasonable doubt, and unanimity of the verdict) were binding, the instructions were cursory and insufficient because the court also referred to the advisory nature of the judge's instructions and the jury's function as judge of the law and the facts. Appellant failed to preserve this issue because he did not object to this portion of the court's instructions at trial. Under these circumstances, this issue is waived on appeal. Rule 757; *Sine v. State,* 40 Md. App. 628, 394 A.2d 1206 (1979).

## VI.

Appellant contends that his representation by trial counsel was so inadequate that he was deprived of his Sixth Amendment right to counsel. *See Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978). We have carefully reviewed the record and we agree with the trial court that counsel had "done an excellent and extremely conscientious job on your [appellant's] behalf." Appellant's complaints about counsel are in our opinion frivolous.

## VII.

Appellant, finally, has enumerated several remarks made by the prosecutor in closing argument which he contends were improper and prejudicial. Appellant has failed to preserve this issue for appellate review because he failed in his brief to indicate where in the record the alleged improper arguments appear. Rule 1031 c 4. That Rule requires that appellant's brief contain a clear and concise statement of facts material to the determination of the questions presented on appeal and reference shall be made to the pages of the record or the transcript of testimony which support

appellant's contention. Appellant has failed to comply with this requirement on this issue and the issue is therefore ' waived. *See von Lusch v. State,* 31 Md. App. 271, 356 A.2d 277, *rev'd on other grounds,* 279 Md. 255, 368 A.2d 468 (1977); *Van Meter v. State,* 30 Md. App. 406, 352 A.2d 850 (1976).

In addition, appellant made no objection to the remarks of the prosecutor at trial and thereby deprived the trial court of the opportunity to take any remedial steps which might be necessary. *See Holbrook v. State,* 6 Md. App. 265, 250 A.2d 904 (1969); Rule 1085.

*Judgments affirmed; costs to be paid by appellant.*