481 A.2d 520

**In re RACHEL S.**

**Nos. 1741, 1742, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Oct. 3, 1984.

Patricia A. Logan, Asst. County Sol., with whom was Stephen R. Beard, County Sol., for Anne Arundel County on the brief for appellant, Department of Social Services.

John R. Greene, Annapolis, with whom was Thomas E. Hicks, Annapolis, on the brief for appellant, Rachel S.

Douglas B. Cording, Annapolis, for appellees.

Argued before MOYLAN and BLOOM, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

MOYLAN, Judge.

Like a falling row of dominoes, one procedural error in this case led to a second procedural error, which in turn caused a third procedural error. It all began on November 9, 1983, when the Anne Arundel County Department of Social Services (the Department) received a complaint about the possible physical and sexual abuse of a three-year-old child, Rachel S. Rachel was immediately taken into shelter care. On the very next day, November 10, the Department simultaneously filed two separate petitions: 1) a petition for shelter care, pursuant to Md.Cts. & Jud.Proc.Code Ann. § 3–815 (1984), and 2) a petition to have Rachel S. adjudicated a child in need of assistance, pursuant to Md.Cts. & Jud.Proc.Code Ann. § 3–810 (1984).

Two separate summonses were issued for two separate hearings, one on each petition. The hearing on the shelter care petition was scheduled, as is required, "on the day the petition [was] filed," on November 10. *See* Md.Rule 912a 3. The adjudicatory hearing on the child in need of assistance petition was scheduled, as is required, "within thirty days," on December 9. *See* Md.Rule 914b 2.

The two petitions, although dealing with the same child, serve different purposes, are dependent upon different criteria, implicate different schedules, and require different procedures. The failure to appreciate these differences triggered the series of errors in this case.

At the November 10 hearing on the issue of shelter care, the Department presented its case for emergency shelter care to the extent to which a case could be marshalled within 24 hours. Its key witness was Diane Allen, a social worker, who had examined and interviewed at some length Rachel S. Without rehearsing all of the detail of that testimony, it is enough to note that the Department presented a very adequate *prima facie* case. The hearing judge ordered the case to be continued until November 15, tentatively approving shelter care until that time. Rachel's

father, the alleged abuser, was in the meantime to take a polygraph examination.

When the hearing was reconvened on November 15, all parties stipulated that the father had passed two polygraph examinations. The Department, in the meantime, had had the opportunity to gather additional evidence of sexual and other physical abuse. The hearing judge peremptorily denied the Department the opportunity to present any additional evidence, predicating his ruling on the fact that the Department had rested its case on November 10. In clear and open reliance on the results of the polygraph tests, the judge dismissed the shelter care petition.

The shelter care issue, involving at most the temporary status of Rachel S. between November 9 and December 9, 1983, is now, of course, moot. Because of the domino effect it had upon the subsequent issues, however, the procedural error that flawed that hearing is not moot.

■ It is unnecessary to discuss whether the denial of the opportunity for the Department to present additional evidence was an abuse of discretion. The erroneous reliance upon the polygraph tests was itself sufficient error to flaw the proceedings. Even if all parties to the adjudication had agreed to accept the results of the polygraph testing, the long settled law in this state is that the technique is considered so inherently unreliable as to preclude the admission of such test results in a trial, civil or criminal. As was unequivocally stated in *Akonom v. State*, 40 Md.App. 676, 680, 394 A.2d 1213 (1978):

> "It cannot logically be argued that a stipulation enhances in any significant way the inherent reliability of evidence produced by a so-called scientific process or art.... Thus, while we are generally reluctant to invalidate agreements entered into by the parties, we view this as one of the unusual occasions when we are obligated to do so."

*See also Poole v. State*, 295 Md. 167, 205, 453 A.2d 1218 (1983) (Davidson, J., concurring and dissenting); *Kelley v.*

*State,* 288 Md. 298, 418 A.2d 217 (1980); *Lusby v. State,* 217 Md. 191, 141 A.2d 893 (1958); *Mitchell v. State,* 51 Md.App. 347, 443 A.2d 651 (1982); *Smith v. State,* 20 Md.App. 577, 318 A.2d 568 (1974); *Rawlings v. State,* 7 Md.App. 611, 256 A.2d 704 (1969).

This error led directly into the next. Aggrieved at the ruling on shelter care, the Department filed a Bill of Exceptions and Request for En Banc Hearing. The parents of Rachel S. requested the hearing judge to file a written decision. On November 25, the judge filed a Memorandum and Order outlining his reasons for the dismissal. It dealt exclusively with the issue of shelter care.

The Department, meanwhile, concluded that it would be more expeditious to drop its request for an En Banc Hearing on the shelter care issue and to go forward on its CINA petition, scheduled for hearing on December 9. Accordingly, it withdrew, on November 28, its request for an En Banc Hearing.

■ On the following day, November 29, the hearing judge issued a *sua sponte* order, further dismissing the CINA petition. No notice was given to any of the parties prior to that dismissal.

That order was clearly improper. Without reviewing the statutes in elaborate detail, it is enough to note that shelter care is a temporary and emergency procedure involving the immediate protection of the child. *See* Md.Cts. & Jud.Proc. Code Ann. §§ 3–801(r) and 3–815 (1984); *see also* Md.Rule 912. A CINA adjudication, on the other hand, is to determine whether a child is in need of assistance and may involve such things as long-term placement for the child, treatment, guidance, or rehabilitation. *See* Md.Cts. & Jud. Proc.Code Ann. §§ 3–801(e), 3–802, and 3–806(a) (1984). Quite aside from the disparity in the issues is the disparity in the procedures. The emergency nature of shelter care requires the parties to marshall their cases on an immediate basis and to go to the trial table within 24 hours. The more leisurely pace for the scheduling of an adjudicatory hearing

on a CINA petition (30 days if the child is in shelter care and 60 days otherwise) contemplates a more complete marshalling of relevant evidence. Md.Rule 914b 1 and 2. To suggest, as the dismissal order of November 29 necessarily suggested, that the failure of the Department to marshall a persuasive case within 24 hours necessarily precluded the Department from marshalling a persuasive case within 30 days simply defies logic. The Department was entitled to a full adjudicatory hearing on its CINA petition on December 9 and the failure to afford it the benefit of such hearing was error.

That second error led directly into the third. Following the dismissal of its first CINA petition on November 29, the Department filed a second CINA petition on November 30 before a different judge and attempted to schedule the hearing on that petition for the December 9 hearing date that had already been set. On December 6, the parents of Rachel S. filed a Motion for Continuance and a Motion Raising Preliminary Objection. The case was continued until December 19. On that date, the new hearing judge heard argument on the Motion Raising Preliminary Objection. He dismissed the second petition. His Order of Dismissal, signed December 21, stated the following:

> "I'm going to grant the motion raising preliminary objection, dismiss the case number Juvenile A–25, 192, because the Court feels that, that [the first hearing judge] knows what he's doing and he, he clearly states that he was dismissing both actions. They were both contained with the same file of A–25, 147, based upon the same set of facts, and he made that decision dismissing it, and therefore the Court feels that uh, the issues have been tried, and if, if—certainly if the county or the state is not satisfied, they would be able to appeal his decision. So I'm going to grant the motion raising preliminary objection."

As the appellees, the parents of Rachel S., acknowledge in their appellate argument, they are relying in this regard

on principles of *res judicata* and/or collateral estoppel. The indispensable predicate for either *res judicata* or collateral estoppel is that there have been "a judgment in the earlier case on the merits." *MPC, Inc. v. Kenny,* 279 Md. 29, 32, 367 A.2d 486 (1977); *Sterling v. Local 438,* 207 Md. 132, 113 A.2d 389 (1955); *Annapolis Urban Renewal v. Interlink,* 43 Md.App. 286, 292, 405 A.2d 313 (1979). Here, there was no earlier judgment on the merits.

ORDERS DISMISSING THE CINA PETITIONS VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY APPELLEES. MANDATE TO ISSUE FORTHWITH.