659 A.2d 384

**Lewis Harold MURPHY**

v.

**STATE of Maryland.**

**No. 1636, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

June 7, 1995.

304

Samuel A. Yee, Law Student (Ira Mickenberg, Assigned Public Defender, on the brief), Washington, DC, for appellant.

Rachel Marblestone Kamins, Staff Atty. (J. Joseph Curran, Jr., Atty. Gen., and Gwynn X. Kinsey, Jr., Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before BLOOM, MOYLAN and ALPERT, JJ.

ALPERT, Judge.

Sixty year-old Lewis Harold Murphy, appellant, was found guilty by a jury in the Circuit Court for St. Mary's County of child abuse, third degree sexual offense, and battery. The victim, Kristy Green, was six years old at the time of the incident. In this appeal, appellant presents the following issues:

I. Whether reversal is mandated when the actual results of a lie detector test are unlawfully admitted at trial and when appellant's credibility is a crucial issue.

II. Whether the State made unlawful references to a polygraph test when the issue of voluntariness of confession was not raised by the defendant and when the references were unduly prejudicial.

III. Whether the State violated the Equal Rights Amendment of the Maryland Declaration of Rights and the Equal Protection Clause of the United States Constitution when it

struck two female jurors using peremptory challenges and when the State offered the explanation that the jurors either were not "sophisticated enough" or that there were too many women on the jury.

We answer "yes" to the first two issues presented by appellant and reverse. We need not address the third issue, since it may not arise on retrial.

## Facts and Proceedings

On July 20, 1993, appellant was babysitting for Kristy Green while his girlfriend, Kristy's grandmother, went shopping. Appellant took Kristy to a nearby creek to catch crabs. According to Kristy, while they were sitting by the creek, appellant touched her vaginal area. When they returned to the house, Kristy's mother called. Kristy told her mother what appellant had done. Kristy and appellant then went back to crabbing. When they returned again to the house, Kristy's parents and several relatives were there. Kristy ran to her father. Appellant denied that he had touched Kristy and stated that all he had done was ask Kristy whether she called her vaginal area a "tweety" or a "bird." The police were called and appellant was questioned. Appellant told the police that Kristy had been jumping up and down on his lap and that he had merely patted her on the bottom to make her stop. He was not arrested at that time.

A few months later, appellant was questioned further by Detective John D. Horne of the St. Mary's County Sheriff's Office. During this meeting, appellant "failed" a polygraph test administered by Detective Horne. Appellant also gave a statement in which he confessed to touching Kristy in her vaginal area. During his confession, reference was made to the fact that appellant had "failed" the polygraph test:

[Detective] Horne: Have you told anybody else this story?
[Appellant]: All to the ah ... [Detective] Shoemaker.
[Detective] Horne: I mean did you ... when you talked to her did you tell her the truth like you talked to me?
[Appellant]: Well, I told it like I told in on there.

[Detective] Horne: I understand that and you told it you told when you took the polygraph.

[Appellant]: Yeah.

*[Detective] Horne: You didn't pass the polygraph but ...*

*[Appellant]: I realize that.*

(Emphasis added).

Appellant was arrested on December 9, 1993 and charged with third degree sexual offense, child abuse, and battery. Trial took place on July 19 and 20, 1994. During direct examination of Detective Horne, the prosecutor sought to admit into evidence a transcribed version of appellant's confession, including that portion of it that referred to appellant failing the polygraph test. Appellant's attorney objected and moved *in limine* to have the reference to the polygraph test excised from the statement. Appellant's attorney also requested that no mention of the polygraph test be made by the State until appellant raised the issue of the voluntariness of his confession. Appellant's attorney argued that until this issue was raised, any reference to the fact that a polygraph test was taken or any reference to the results of such test would be grounds for a mistrial. The trial court denied these motions and admitted the statement into evidence. The court also permitted Detective Horne to testify regarding his expertise in the administration of polygraph tests, and to testify concerning the waiver form that he witnessed appellant sign prior to taking the polygraph test. Appellant's attorney objected to each reference to the polygraph test by the prosecution and, at the close of the State's case, moved for a mistrial. This motion was, likewise, denied.

Appellant was found guilty on all charges and sentenced to ten years, with all but eighteen months suspended. He also received five years probation.

## Admissibility of Polygraph Test

Appellant argues that it was reversible error for the trial court to have admitted any evidence of the polygraph test. He contends that he was unduly prejudiced by not only the

reference to the results of the test but also by the numerous references during direct examination of Detective Horne to the fact that a test was administered.

 It is well-settled in Maryland that the results of a polygraph test are inadmissible. *Guesfeird v. State*, 300 Md. 653, 658, 480 A.2d 800 (1984); *Lusby v. State*, 217 Md. 191, 194–95, 141 A.2d 893 (1958).[1] The principle reason for excluding such evidence is that the polygraph has not attained that degree of general scientific acceptance as an accurate and reliable means of ascertaining truth to justify reliance upon it in a court of law. *See Rawlings v. State*, 7 Md.App. 611, 613–14, 256 A.2d 704 (1969) (holding for the first time that the results of lie detector tests are not admissible in Maryland courts).[2] Indeed, mere references to the fact that a test was

---

**1.** A polygraph test measures involuntary body responses to stress such as changes in blood pressure, pulse, respiration, and the skin's resistance to electricity. Rydstrom, *Modern Status of Rule Relating to Admission of Results of Lie Detector (Polygraph) Test in Federal Criminal Trials*, 43 A.L.R.Fed. 68, 71 (1979).

> The polygraph is based on the principle that the autonomic nervous system will respond to stressful conditions and that sympathetic parts of that system will respond involuntarily. These parts of the system are not controllable. A lie is an emergency to the psychological well being of a person and causes stress. Attempts to deceive cause the sympathetic branch of the autonomic nervous system to react and cause bodily changes of such a magnitude that they can be measured and interpreted.

*Id.* at 71, n. 1 (citation omitted).

**2.** The inherent unreliability of polygraph tests and their inadmissibility has long been recognized by commentators and courts alike. In *Johnson v. State*, 31 Md.App. 303, 307–08, 355 A.2d 504 (1976), we explained:

> The reason for excluding the *results* of a polygraph examination is the questionable reliability of such evidence. Similarly, the admission into evidence of whether an accused agreed or refused to take such a test may give rise to jury speculation as to his reasons for submitting or refusing to submit to the test. In both cases, a determination of guilt or innocence may be affected by an accused's state of mind after the crime, rather than upon evidence produced related to the crime itself.

(emphasis in original).

One commentator aptly explained how polygraphy differs from other, accepted fields of criminology:

taken, without mentioning the results of the test, may be grounds for reversal if the results can be inferred from the circumstances or if the references are prejudicial. *Guesfeird,* 300 Md. at 659, 480 A.2d 800 (citing *State v. Edwards,* 412 A.2d 983, 985 (Me.1980)).[3] *See also Johnson v. State,* 303 Md. 487, 513, 495 A.2d 1 (1985); *Lusby,* 217 Md. at 195, 141 A.2d 893.

In *State v. Hawkins,* 326 Md. 270, 275, 604 A.2d 489 (1992), the Court of Appeals observed:

> The reliability of [polygraph] tests has not been established to our satisfaction, and we have consistently refused to permit evidence with regard to them. In our system of criminal justice, the trier of fact is the lie detector, and we have been steadfast in disallowing that function to be usurped by a process we have not found to be trustworthy.

---

> A study of the theory and process of the polygraphy examination reveals complexities not present in the fields of fingerprint, handwriting, voice print, ballistics, and neutron activation analysis, all of which are based on the identity or behavior of physical phenomenon. The experts and studies differ as to the capability of the polygraph industry to cope with these complexities, but none would dispute their existence. The distinction is that polygraphy, albeit based on scientific theory, remains an art with unusual responsibility placed on the examiner. The acquainting of the examiner with the subject matter is often a source of improper suggestion, conscious or subconscious. The preparation of the test and discussion with the examinee of the polygraph procedure furnishes additional opportunity for improper subjective evaluation. The construction of the examination further proliferates controversy, for while experts may agree that a particular examination was inconclusive, they often do so for different reasons.

Rydstrom, *Modern Status of Rule Relating to Admission of Results of Lie Detector (Polygraph) Test in Federal Criminal Trials,* 43 A.L.R.Fed. at 71 (footnote and citation omitted).

3. In *Johnson,* 31 Md.App. at 307–08, 355 A.2d 504, we explained:
> [E]vidence of the *use* of a polygraph as a device to obtain a statement is substantially less prejudicial than either the impact of the questionable results of the device or the effect of the defendant's refusal to take the test. The importance of permitting the jury to weigh the coercive effect of every motivating circumstance surrounding the eliciting of a confession, far outweighs the importance of avoiding the possible prejudice from a reference to its use.

(emphasis in original).

Mention at a criminal trial of the results of a polygraph test, or the taking of the test, or the willingness or unwillingness to take the test, raises the specter of reversal. In criminal prosecutions, the polygraph test is a pariah; "polygraph" is a dirty word.

(citation omitted).

Here, there is no question that the jury was made aware of the fact that appellant did not pass the polygraph test. In appellant's confession, a tape of which was played for the jury, it was stated:

[Detective] Horne: You didn't pass the polygraph but . . .

[Appellant]: I realize that.

In addition, as appellant notes, the "fact" that he took a polygraph test was referred to numerous other times during the direct examination of Detective Horne by the State.

The State argues, however, that an exception to the general rule regarding the admissibility of polygraph tests is applicable in this case. This exception allows evidence of a polygraph test to be admitted where the voluntariness of a confession is at issue. *Mitchell v. State,* 51 Md.App. 347, 353, 443 A.2d 651, *cert. denied,* 293 Md. 617, *cert. denied,* 459 U.S. 915, 103 S.Ct. 227, 74 L.Ed.2d 180 (1982). Under this exception, the taking of a lie detector test may be considered by the jury in determining whether a confession, elicited prior to, contemporaneously with, or after the test, was freely and voluntarily given. The rationale for this exception is that the fact that a polygraph test was administered during police questioning of a suspect is no different than any "other potentially coercive condition, person or device present during interrogation." *Johnson,* 31 Md.App. at 309, 355 A.2d 504. "The jury must have the opportunity to consider *all* of the evidence pertaining to the voluntariness of a confession before deciding the question of guilt or innocence." *Id.* (emphasis in original).

In *Johnson,* the defendant sought to have the fact that he was subjected to a polygraph test during his interrogation submitted to the jury in order to support his allegation that his confession was involuntary. *Id.* at 306, 355 A.2d 504.

The trial court denied the defendant's request, and on appeal we held that the exclusion of such evidence was reversible error. *Id.* We noted that the test given to the defendant was a psychological tool used by the police in the interrogation process and was therefore relevant to the voluntariness of his confession. *Id.* at 307–09, 355 A.2d 504.

In *Mitchell,* 51 Md.App. at 350, 443 A.2d 651, it was again the defendant who sought to admit evidence of a polygraph test. There, two polygraph tests were administered in order to verify statements the defendant made to the police. *Id.* at 353, 443 A.2d 651. The trial court ruled *sua sponte* that the jury could not be informed that the tests were given to the defendant. *Id.* at 350, 443 A.2d 651. We affirmed, holding that the court did not err in excluding such evidence. *Id.* at 353–54, 443 A.2d 651. We noted that the defendant did not claim that he was coerced into making the statements, but rather sought to have the fact that the tests were administered submitted to the jury in order to demonstrate that the tests "influenced the police in their conduct toward the defendant." *Id.* at 353, 443 A.2d 651. We stated:

[The voluntariness exception] is limited to situations *where the issue of voluntariness of a statement is before a jury, and where it is contended that the administering of a polygraph test is relevant to the question of whether the statement was voluntarily given.* Only under these circumstances is the jury entitled to have the facts before it in order to assist them in deciding whether it is convinced beyond a reasonable doubt that the statements were voluntary. *In the absence of such an issue being generated, however, neither the fact that a polygraph test was administered nor the results of the test should be admitted into evidence.* To hold differently would encourage the indulgence by a jury in rank speculation to the detriment of either the State or the defense.

*Id.* at 353–54, 443 A.2d 651 (emphasis added).

Thus, we must decide whether the issue of voluntariness was sufficiently raised in this case so as to warrant submitting evidence of appellant's polygraph test to the jury.

Guidelines for raising the involuntariness of a confession are set forth in Maryland Rule 4–252(a). Pursuant to this Rule, it is mandatory that a defendant file a motion to suppress an unlawfully obtained confession prior to trial. Md.Rule 4–252(a)(4). The motion must be filed within 30 days of the defendant's first appearance in court and must be in writing unless the court otherwise directs. Md.Rule 4–252(b), (d). The failure to file such a motion results in the waiver of this argument by the defendant. Md.Rule 4–252(a). The Rules further require that the court decide the motion "before trial and, to the extent practicable, before the day of trial . . . ." Md.Rule 4–252(f).

■ The Court of Appeals has delineated a specific two-tiered process for determining the voluntariness of any confession sought to be admitted at trial. Under this procedure, "the jury determines voluntariness only after the judge has 'fully and independently' ruled that the confession is voluntary." *Brittingham v. State*, 306 Md. 654, 662, 511 A.2d 45 (1986) (quoting *Dempsey v. State*, 277 Md. 134, 145, 355 A.2d 455 (1976)). The judge must first conduct a hearing, without the jury present, to "determine as a matter of law whether the challenged confession will or will not be admitted into evidence." *Kidd v. State*, 33 Md.App. 445, 457, 366 A.2d 761 (1976), *aff'd*, 281 Md. 32, 375 A.2d 1105, *cert. denied*, 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977). If the judge is convinced from all the evidence that the confession was freely and voluntarily made, it should be admitted as prima facie proof. *Brittingham*, 306 Md. at 663, 511 A.2d 45 (quoting *Smith v. State*, 189 Md. 596, 603–04, 56 A.2d 818 (1948)). The jury then must determine for itself whether the confession was voluntary beyond a reasonable doubt. *Id.*

Here, the lower court overruled a pre-trial motion by appellant to suppress his statement to the police. We cannot determine from the record before us whether the polygraph issue was raised before the motions judge but shall assume that it was since the docket entry states, "Defendant present with counsel for Suppression hearing . . . State's Ex # 1

(Miranda Card), #2 (Statement), #3 (Waiver form), #4 (Waiver form), #5 (audio cassette tape), and #6 (statement) marked for ID and Rec'd.... Motion to Suppress is denied." The State also claims that the voluntariness issue was raised during a colloquy that took place at trial between counsel and the court regarding the admissibility of the statement given by appellant. Prior to Detective Horne testifying, the court suggested to counsel that the reference to the polygraph be excised from the statement. When the court asked the prosecutor and appellant's attorney what they thought of this suggestion, the prosecutor responded that under the voluntariness exception, the "jury is entitled to listen to any and all evidence that involves the voluntariness of the statement made to Corporal Horne." Appellant's attorney then explained that it was his impression that if his client decided to take the stand he was going to testify that he was coerced into making the confession:

> I understand Mr. Murphy to tell me that his confession and his admission of touching Kristy's private parts in the tape recorded statement he gave to Horne ... was an involuntary statement, and is not true, and the only reason he did it [was] because Corporal Horne tricked him and threatened him, tricked him with the polygraph and threatened in the polygraph after the polygraph procedure was over and just the two of them alone. And I expect Mr. Murphy is going to want to testify and tell the jury that that wasn't a voluntary statement, he tricked me and threatened me and that is the only reason I said that, and I didn't really touch the girl's private parts.

> \* \* \* \* \* \*

> And so, therefore, I could be wrong, he could elect to remain silent....

Appellant's attorney then requested that the reference to the polygraph test in the statement given by appellant be stricken and that no mention be made of the test until appellant first mentions it in the defense's case.

I think how it ought to be approached is this, is the State ought not even mention the polygraph until after Mr. Murphy mentions the polygraph, and perhaps they ought to do it in rebuttal, because I think it ought to be—the jury ought not to hear it from anybody until they hear it from Mr. Murphy in the defense's case.

\* \* \* \* \* \*

Well, that is how I would so move the Court to handle this situation is to have the polygraph excised from the State's case and [sic] chief. If the defendant brings it up, then they may bring it back up if they deem it necessary.

The court denied this request by appellant's attorney, and ruled that the reference to the polygraph test need not be stricken. The transcribed statement was admitted into evidence in its entirety and Detective Horne was permitted to testify that he was qualified to administer polygraph tests, that he advised appellant of his rights prior to the test, and that he witnessed appellant sign a waiver form for the test. Appellant's attorney objected to the admissibility of the statement and to each reference by Detective Horne to the polygraph test itself. During the defense's case, appellant chose not to take the stand and did not present any evidence regarding the voluntariness of his confession.

### Evidence of Results of Polygraph Test

■ We hold that it was reversible error for the court to admit the transcript of the confession without excising the reference to appellant's failing the polygraph test. This reference was clearly prejudicial and should not have been presented to the jury. We foresee very few circumstances under which the "results" of a polygraph test would ever be admissible. The potential for prejudice resulting from the jury knowing whether a defendant passed or failed a polygraph test would far outweigh any probative value that such evidence might have in determining the voluntariness or involuntariness of a subsequently or previously obtained confession. While the "fact" that the test was taken may be relevant under some circumstances to the voluntariness of a confession, the actual

results of the test would ordinarily have very little, if any, such relevance. It would have been a simple measure for the court to have excised from the confession the one reference to the results of the test.

### Evidence of Taking Polygraph Test

█ We also hold that it was reversible error for the trial court to permit any references to the "fact" that appellant had even taken a polygraph test. The continual references to the test during Detective Horne's testimony was, in our view, extremely prejudicial to appellant. These references imbedded in the jury's mind not only that a test was administered to appellant, but, even in the absence of direct evidence, would likely lead the jury to infer that appellant had, in fact, failed the test. The State clearly went beyond what was necessary in order to establish that the confession given by appellant after the test was voluntary. The prejudice suffered by appellant as a result of the court admitting evidence of the polygraph test was not cured by the its instructions to the jury.[4] *Compare Kelly v. State,* 16 Md.App. 533, 298 A.2d 470, *aff'd,* 270 Md. 139, 310 A.2d 538 (1973) (holding that inadvertent response by prosecution witness indicating that she had taken a lie detector test was cured by court's instruction to jury to disregard any reference to the test and not consider it in determining whether witness' testimony as to what occurred was credible).

---

4. The trial court instructed the jury:

 Now, ladies and gentlemen, during the course of your listening to the tape that the police officer played for you, and you followed along with the transcript, there was mention of a polygraph. Now, any testimony, any reference regarding a polygraph is to be given no weight whatsoever by you on the issue of the defendant's guilt or innocence. Polygraph test[s] in Maryland are inadmissible to prove the guilt or innocence of an individual in a criminal case. They are not sufficiently reliable to be considered as evidence in a court of law. And you are to totally, completely disregard any reference to that. You may only consider any testimony regarding a polygraph on the issue of whether the defendant, Mr. Murphy's tape recorded statement, was given to Detective Horne in a voluntary manner.

■ In summary, the voluntariness (polygraph) exception is not applicable here. The remarks of appellant's attorney during trial regarding his impression of what his client would testify to, if and when he took the stand, were not sufficient to generate the polygraph (as an instrument of coercion) issue in the case. Appellant, in fact, never took the stand and offered no evidence pertaining to the voluntariness of his confession.[5]

■ The decision to raise the voluntariness issue, predicated on the coercive effect of a polygraph test, is a matter solely within the discretion of the defendant. If he chooses not to do so, no reference whatsoever may be made during trial to the fact that the defendant took a polygraph test. If, on the other hand, a defendant chooses to challenge the voluntariness of a confession due to an allegedly coercive polygraph, he runs the risk that the reference may be made to the test by the State or that he may have to make reference to it himself in order to have the confession suppressed.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR ST. MARY'S COUNTY FOR A NEW TRIAL. COSTS TO BE PAID BY ST. MARY'S COUNTY.

---

5. Even assuming the voluntariness issue was adequately raised, the State had ample opportunity to demonstrate to the jury that the statement was voluntarily given by appellant without referring to the polygraph test. The State asked Officer Horne whether appellant was informed of his rights and whether he signed a waiver form prior to taking the statement. The State also questioned Officer Horne about appellant's behavior and demeanor at the time he took the statement, including whether appellant appeared under the influence of any drugs or alcohol. Officer Horne testified that "No threat or force was used to get the statement."